# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT
# No. _____

---

## IN RE WELLS FARGO BANK, N.A.

*Petitioner*

---

**On Writ of Mandamus From The
United States District Court
for the District of Massachusetts
Case No. 1:11-CV-11428-WGY**

**The Honorable William G. Young
United States District Judge**

---

## PETITION FOR WRIT OF MANDAMUS

---

**SEYFARTH SHAW LLP**
ARTHUR G. TELEGEN (ABN 19002)
DAVID M. BIZAR (ABN 1145583)
Two Seaport Lane, Suite 300
Boston MA, 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801
atelegen@seyfarth.com
dbizar@seyfarth.com

**SEYFARTH SHAW LLP**
JAMES M. HARRIS
2029 Century Park East, Suite 3500
Los Angeles, CA 90067-3021
Telephone: (310) 277-7200
Facsimile:  (310) 201-5219
jharris@seyfarth.com

Attorneys for Petitioner, Wells Fargo Bank, N.A.

## CORPORATE DISCLOSURE STATEMENT

Petitioner Wells Fargo Bank, N.A. files this Corporate Disclosure Statement pursuant to the provisions set forth in Fed. R. App. P. 26.1 and Fed. R. Civ. P. 7.1.

Wells Fargo Bank, N.A. is a National Association federally chartered with the Office of the Comptroller of Currency.  Wells Fargo Bank, N.A.'s main office, as set forth in its articles of association, is located in Sioux Falls, South Dakota. Wells Fargo Bank, N.A. is a wholly owned subsidiary of Wells Fargo & Company. Wells Fargo & Company is a corporation organized under the laws of Delaware and a financial holding company registered under the Bank Holding Company Act of 1956, as amended.  It is a public company traded on the New York Stock Exchange under the trading symbol WFC.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION AND RELIEF SOUGHT ........................................... 1

ISSUES PRESENTED ......................................................................... 4

STATEMENT OF CASE AND FACTS ................................................. 4

ARGUMENT ..................................................................................... 10

I.     ISSUANCE OF A WRIT OF MANDAMUS IS NECESSARY AND
       APPROPRIATE. ...................................................................... 10

II.    WRIT RELIEF IS APPROPRIATE WHERE THE DISTRICT
       COURT REFUSES TO PERFORM A MANDATORY
       PROCEDURE OR ACTS IN EXCESS OF ITS JUDICIAL
       AUTHORITY. .......................................................................... 11

       A.     Refusal To Perform A Mandatory Procedure. .................. 11

       B.     Actions In Excess of Judicial Authority. ......................... 12

III.   THE DISTRICT COURT IMPROPERLY REFUSED TO PERFORM
       THE MANDATORY PROCEDURE OF ENTERING JUDGMENT. ........ 14

IV.    THE DISTRICT COURT EXCEEDED ITS JUDICIAL
       AUTHORITY. .......................................................................... 15

       A.     The Supremacy Clause Of The United States Is Not A
              Technicality. ................................................................... 16

       B.     The Order Is Inconsistent With The Federal Rules Of Civil
              Procedure. ...................................................................... 19

       C.     The Order Adds Requirements For The Assertion Of HOLA
              Preemption Not Authorized By Congress. ......................... 23

V.     WITHOUT MANDAMUS REVIEW, WELL FARGO WILL
       SUFFER CONTINUING IRREPARABLE HARM. ................... 25

VI.    WITHOUT MANDAMUS REVIEW, OTHER LITIGANTS ARE
       LIKELY TO SEEK SIMILAR ORDERS IN THEIR CASES. ..... 27

CONCLUSION .................................................................................. 29

CERTIFICATE OF SERVICE ........................................................... 30

ADDENDUM .................................................................................... 31

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**FEDERAL CASES**

*Arizona v. United States,*
     131 S.Ct. 2942 (2012) ........................................................ 16, 17, 25

*Bank of Nova Scotia v. U.S.,*
     487 U.S. 250 (1988) ................................................................. 22

*Brotherhood Of Maintenance Of Way Employees Division/IBT v. Union*
     *Pacific R. Co.,*
     460 F.3d 1277 (10th Cir. 2006) ........................................................ 25

*Cal. Coast Fed. Sav. and Loan Assoc.,*
     98 F. Supp. 311, 316 (S.D. Cal. 1951) ...................................................7

*Christopher v. Stanley-Bostitch, Inc.,*
     240 F.3d 95 (1st Cir. 2001) ........................................................ 13

*Clark v. Universal Builders, Inc.,*
     501 F.2d 324 (7th Cir. 1974) ........................................................ 20

*Ex parte Newman,*
     81 U.S. 152 (1871) ........................................................ 11, 12, 15

*Fidelity Fed. Sav. And Loan Ass'n v. de la Cuesta,*
     458 U.S. 141 (1982) ........................................................ 17, 18

*Gardiner v. A.H. Robins Co.,*
     747 F.2d 1180 (8th Cir.1984) ........................................................ 13

*Gonzalez v. U.S.,*
     553 U.S. 242 (2008) ........................................................ 21, 22

*Hall v. C.I.R. (Dept. of Treasury),*
     805 F.2d 1511 (11th Cir. 1986) ........................................................ 19

*In re Atlantic Pipe Corp.,*
     304 F.3d 135 (1st Cir.2002) ........................................................ 11, 28

*In re Attorney General,*
    596 F.2d 58 (2d Cir. 1979)................................................................. 12

*In re Austrian, German Holocaust Litigation,*
    250 F.3d 156 (2nd Cir. 2001)............................................. 13, 24, 25

*In re Charge of Judicial Misconduct,*
    593 F.2d 879 (9th Cir. 1979) ............................................. 12, 15, 26

*In re Palumbo Family Ltd. Partnership,*
    182 B.R. 447 (E.D. Va. 1995)........................................................ 21

*In re Pearson,*
    990 F.2d 653 (1st Cir. 1993)........................................................ 12

*In Re Perry,*
    859 F.2d 1043 (1st Cir. 1988)...................................................... 14

*In Re Puerto Rico Elec. Power Authority,*
    687 F.2d 501 (1st Cir. 1982)................................................. 13, 23

*In re Recticel Foam Corp.,*
    859 F.2d 1000 (1st Cir. 1988)...................................................... 13

*In re Sony BMG Music Entertainment,*
    564 F.3d 1 (1st Cir. 2009)..................................................... 12, 26

*In re Sterling-Suarez,*
    306 F.3d 1170 (1st Cir. 2002)...................................................... 11

*In re United States,*
    426 F.3d 1 (1st Cir. 2005)................................... 12, 13, 22, 23, 26, 28

*In re Williams,*
    156 F.3d 86 (1st Cir. 1998)........................................................ 13

*Jones v. Barnes,*
    463. U.S. 745, 751 (1983)........................................................... 28

*Jones v. Bock,*
    549 U.S. 199 (2007)................................................................... 24

*L.Z. v. Parrish*,
    733 F.2d 585 (8th Cir. 1984) ................................................................ 14

*Link v. Wabash R. Co.*,
    370 U.S. 626 (1962) .................................................................... 21, 28

*Moore v. U.S. ex rel. Lindmark*,
    33 App. D.C. 597, 1909 WL 21394 (D.C. Cir. 1909) ...................................... 12

*Nansamba v. North Shore Medical Center, Inc.*,
    ___ F.3d ___, 2013 WL 4051886 (1st Cir. Aug. 12, 2013).......................... 21, 22

*Oliveras v. Wilkins*,
    2010 WL 423107 (S.D.N.Y. 2010) ........................................................ 20

*Ramirez v. Rivera-Dueno*,
    861 F.2d 328 (1st Cir. 1988) ............................................................ 13

*Steccone v. Morse-Starrett Products Co.*,
    191 F.2d 197 (9th Cir. 1951) .................................................. 12, 15, 26

*Taylor v. Illinois*,
    484 U.S. 400 (1988) ..................................................................... 28

*U.S. v. Cole*,
    496 F.3d 188 (2nd Cir. 2007) ............................................................ 19

*U.S. v. Horn*,
    29 F.3d 754 (1st Cir. 1994) ................................................ 10, 12, 13, 15, 25

*U.S. v. Klubock*,
    832 F.2d 649 (1st Cir. 1987) ............................................................ 19

**FEDERAL STATUTES**

12 U.S.C. § 1464(a) ................................................................... 17, 18

All-Writs Act, 28 U.S.C. § 1651 ......................................................... 10

§ 5(a) of the HOLA ...................................................................... 17

**RULES**

Fed. R. Civ. P. 11(a) ................................................................... 20

iv

Fed. R. Civ. P. 11(b) ................................................................ 20

Fed. R. Civ. P. 12(b)(6) ........................................................... 20

Fed. R. Civ. P. 30(b)(6) ........................................................... 19

Fed. R. Civ. P. 33(b) ................................................................ 19

Fed. R. Civ. P. 36(a)(4) ............................................................ 19

Fed. R. Civ. P. 58(b) .................................................................. 9

Fed. R. Civ. P. 58(b)(C) ........................................................... 14

Rule 11 .................................................................................... 20

**REGULATIONS**

12 C.F.R. § 560.2 .................................................................... 18

12 C.F.R. § 560.2(a) .................................................................. 7

**CONSTITUTIONAL PROVISIONS**

U.S. Const., Article VI, cl. 2 .................................................... 16

## INTRODUCTION AND RELIEF SOUGHT

On September 17, 2013, the District Court (per the Honorable William G. Young) issued its Memorandum and Order ("Order") on Wells Fargo's motion to dismiss Plaintiff Joseph Henning's claims. The Court dismissed without leave to amend all of Plaintiff's claims, concluding that most of them were preempted by the federal Home Owners' Loan Act ("HOLA").

The Court did not enter judgment, however. Instead, the Court placed a condition on Wells Fargo's preemption defense. It ordered Wells Fargo to submit a "formal corporate resolution" signed by its President and a majority of its Board of Directors affirming that Wells Fargo "stands behind the conduct of its skilled attorneys and wishes to avail itself of the technical preemption defense to defeat Henning's claim." PA 42. The Court commanded that if Wells Fargo does not submit the corporate resolution within 30 days of its order, the Court will consider the preemption defense waived and restore the preempted claims for trial to a jury. *Id*.

The only reason the Court gave for its command is its expressed belief that HOLA is an "obsolete" "technicality," which "led [it] to inquire whether Wells Fargo wishes to address Henning's claims on the merits" because "[a]fter all it may be that Wells Fargo has done nothing wrong." PA 42.

1

Mandamus review is essential here for multiple reasons. First, mandamus review appropriately lies where a District Court refuses to enter judgment under circumstances that require it to do so. Having dismissed Plaintiff's claims after determining that they incurably failed as a matter of law, the District Court was required to enter judgment.

Mandamus review also is necessary because, by conditioning entry of judgment on the submission of a formal corporate resolution, the District Court purported to exercise a power it does not have. The condition has no basis in the law and creates a new requirement for obtaining dismissal or other judicial relief not authorized by the Federal Rules of Civil Procedure or HOLA.

Wells Fargo met all of the preemption requirements contemplated by Congress and the Office of Thrift Supervision ("OTS"), and the procedural requirements of the Federal Rules to invoke HOLA preemption as a defense. It would subvert basic precepts of Federalism and Separation of Powers if the District Court were permitted to add an arbitrary and burdensome requirement of a formal corporate resolution, just because the Court personally disagreed with Congress and the OTS's judgment on the scope of HOLA preemption and Wells Fargo's decision to invoke it. Further, the Court's corporate resolution requirement is invasive of the attorney-client relationship, and interferes with the orderly and proper functioning of the litigation process.

Wells Fargo is being irreparably harmed by the District Court's Order. Most obviously, Wells Fargo is now prevented from obtaining judgment even though the Court has adjudicated Plaintiff's claims in its favor. Wells Fargo can obtain the judgment to which it is entitled only by agreeing to the coercive condition that the District Court had no power to impose.

Moreover, Wells Fargo has no adequate appellate remedy. If it complies with the Order or if it prevails at trial of the claims that the District Court concluded were not actionable, it would not be able to appeal from the resulting favorable judgment. And if Wells Fargo declines to comply and loses at trial, any appellate remedy would necessarily be inadequate because Wells Fargo would have been forced to litigate through appeal a meritless action it was legally entitled to have dismissed at the outset.

Further, if the Court's Order is not expeditiously vacated, it will have ramifications far beyond this case. If allowed to stay on the books, the District Court's Order undoubtedly will prompt copycat demands for corporate resolutions in cases where corporate parties assert purportedly disfavored claims and defenses through their attorneys.

For all of these reasons, mandamus relief is warranted to vacate the District Court's arbitrary "corporate resolution" requirement and to direct the prompt entry of judgment for Wells Fargo.

## ISSUES PRESENTED

1.      Did the District Court err in refusing to allow judgment to enter in favor of Defendant Wells Fargo notwithstanding that it had dismissed all of Plaintiff's claims?

2.      Did the District Court err in ordering that, unless Wells Fargo submitted a corporate resolution executed by its President and a majority of its Board of Directors that Wells Fargo desired "to avail itself of the technical preemption defense" that the Court held was meritorious and had been properly asserted in a motion to dismiss, the District Court would "deem the preemption defense waived" and restore Plaintiff's claims for trial before a jury?

## STATEMENT OF CASE AND FACTS

1.      ***The parties***.  Plaintiff/real party Joseph Henning is a Massachusetts resident.  In 2006, he took out a home mortgage loan from World Savings Bank, FSB ("World Savings"), in the amount of $215,250. PA 5, 8.[1]  Later that year, he also took out a home equity credit line from World Savings in the amount of $43,000.  *Id.*

_____

[1] This Petition raises only a single legal issue going to the scope of the District Court's powers/obligations following a ruling that Plaintiff's claims are all subject to dismissal.  The facts relevant to that issue are not subject to reasonable dispute and are contained in the District Court's Order of September 17, 2013, which is set forth in the Petitioner's Appendix ("PA") submitted herewith.

Petitioner/defendant Wells Fargo Bank, N.A., is a national banking association.  Wells Fargo is the successor in interest of World Savings, a federal savings bank, and as such, has assumed World Savings' obligations on Plaintiff's loans.  *Id.* at 2, n.2.  Without going into transactional details unnecessary to the issues raised herein, subsequent to 2006 World Savings changed its name to Wachovia Mortgage Corporation, FSB ("Wachovia"), which in turn subsequently merged into Wells Fargo.  *Id.*

2.    ***Plaintiff's original complaint.***  On May 15, 2009, Plaintiff filed his original complaint in Massachusetts state court.  PA 3.  All of Plaintiff's claims were based on allegations that World Savings had engaged in various deceptive or predatory actions in connection with the origination of Plaintiff's loans.  *Id.* at 4-7

Wachovia removed the case to the United States District Court for the District of Massachusetts on diversity grounds.  *Id.* at 8-9.  In July, 2010, the case was consolidated with another case pending in that District "stemming from mortgages 'for which Wachovia [also] was allegedly responsible.'"  *Id.* at 4.

3.    ***The case is consolidated with a class action from which Plaintiff opted out.***  On August 19, 2010, the Judicial Panel on Multidistrict Litigation transferred the case to the Northern District of California, where a putative class action was pending against Wells Fargo based on allegations similar to those made by Plaintiff here.  PA 4.  A settlement was reached in the class action which the

Northern District of California found to be fair and reasonable. Plaintiff opted out of the class settlement. *Id*. As a result, the case was transferred back to the District of Massachusetts on June 9, 2011, and eventually assigned to Judge Young.

   4.   ***Plaintiff's operative complaint.*** Plaintiff filed his third amended complaint, the operative pleading, on August 29, 2012. PA 4. As described more fully in the District Court's Order, Plaintiff alleged that World Savings had engaged in a number of predatory or deceptive practices which resulted in Plaintiff acquiring a loan he could not afford. *Id*. at 4-8.

   Based on such allegations, Plaintiff asserted claims for (1) unjust enrichment; (2) equitable relief; (3) violation of the implied covenant of good faith and fair dealing; (4) Massachusetts consumer protection laws; (5) negligence under Massachusetts statutory duties; (6) negligence under federal statutory duties; and (7) breach of contract.

   Wells Fargo vigorously disputes Plaintiff's factual allegations. However, this Petition raises only legal questions going to the extent of the District Court's powers.

   5.   ***Wells Fargo's motion to dismiss.*** On January 11, 2013, Wells Fargo (as World Savings' and Wachovia's successor in interest) filed a motion to dismiss. Wells Fargo asserted two grounds: first, that Plaintiff's state law claims were not cognizable under state law; and second, that HOLA also preempted them.

Enacted as a response to the Great Depression, HOLA grants the OTS broad authority to regulate "the powers and operations of every Federal savings and loan association from its cradle to its corporate grave." PA 11 (quoting *Cal. Coast Fed. Sav. and Loan Assoc.*, 98 F. Supp. 311, 316 (S.D. Cal. 1951)). Pursuant to its statutory mandate, the OTS has issued regulations governing "all aspects of the operations of Federal savings associations." 12 C.F.R. § 560.2(a). The OTS regulations state that they "occup[y] the entire field of lending regulation" and thus preempt state laws purporting to regulate that field. *Id.*

As Wells Fargo demonstrated in its motion to dismiss, World Savings was chartered as a federal savings bank when it issued the loans to Plaintiff in 2006. PA 11, n.6. Consequently, the lending activities underlying Plaintiff's claims were subject to federal OTS authority, triggering the preemptive effect of HOLA. *Id.*

**The District Court dismisses each of Plaintiff's claims.** On September 17, 2013, the District Court issued its Order resolving the substantive issues raised by Wells Fargo's motion to dismiss. It concluded that each of Plaintiff's claims was subject to outright dismissal.

The Court first determined that the breach of contract claim, while not preempted by HOLA, was legally insufficient because Plaintiff's allegations of breach were "flatly contradicted by the terms of the mortgage and note." PA 16.

Likewise, the "equitable relief" claim was legally insufficient because no such cause of action exists. *Id*. at 28.

The Court then concluded each of the remaining claims were preempted by HOLA and its implementing regulations. For example, the Court found that "allowing a negligence claim such as [asserted by Plaintiff] could potentially expand or change the regulatory scheme imposed on federal lenders in an area over which the OTS has occupied the field." *Id*. at 32; *see also id*. at 34 (negligence claim "clandestine way of imposing requirements on lenders that states otherwise could not enact through legislation or regulation.").

Likewise, the Court concluded the unjust enrichment claim was preempted because it sought to "challeng[e] a lender's disclosure and advertising policy, a power reserved to the federal government." *Id*. at 26. *See also id*. at 19-20 (implied covenant claim preempted because it "would effectively impose regulations on a lender").

The Court specifically concluded that each claim "is dismissed," either as legally insufficient or as preempted by HOLA. *Id*. at 19, 21, 28, 32, 36, 41. Obviously, the correctness of these dispositive legal rulings is not challenged in this Petition.

***The District Court conditions entry of judgment on submission of a***

***corporate resolution authorizing the assertion of the preemption defense.***

Notwithstanding its conclusion that each claim "is dismissed" (PA 41), the District

Court did not allow judgment to enter as required by Fed. R. Civ. P. 58(b).  The

Court found that "Wells Fargo wins on a technicality" that can be waived.  PA 41.

The Court observed, that "were Henning to prove his case on the merits, the

conduct of Wells Fargo would be shown to be nothing short of outrageous" and

"perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by

fair-minded American jurors." *Id*.  The Court remarked that it had visited Wells

Fargo's website, wherein it "vigorously promotes itself as consumer friendly . . .; a

far cry from the hard-nosed win-at-any cost stance it has adopted here" by

invoking HOLA preemption.  *Id*.  And it found that "[t]he disconnect between

Wells Fargo's publicly advertised face and its actual litigation conduct here could

not be more extreme." *Id*. at 41-42.  The Court stated "[t]hese facts lead this Court

to inquire Whether Wells Fargo wishes to address Henning's claims on the merits.

After all, it may be that Wells Fargo has done nothing wrong." *Id*. at 42.

The Court ordered that Wells Fargo must accordingly submit within 30 days

a formal corporate resolution, signed by the President and a majority of the Board,

indicating Wells Fargo "wishes to avail itself of the technical preemption defense

to defeat [Plaintiff's] claim." *Id*.  The Court further ordered that, if Wells Fargo

complied, "judgment will enter for Wells Fargo." *Id.* But, "if no such resolution is filed, the court will deem the preemption defense waived [and the parties] will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury." *Id.*

The District Court cited no authority for its power to direct the filing of such a corporate resolution on pain of waiver of the entry of judgment and restoration of dismissed claims for trial.

## ARGUMENT

### I. ISSUANCE OF A WRIT OF MANDAMUS IS NECESSARY AND APPROPRIATE.

This Court "possess[es]—and can appropriately exercise—the power of discretionary review, via mandamus" under the All-Writs Act, 28 U.S.C. § 1651. *U.S. v. Horn*, 29 F.3d 754, 769 (1st Cir. 1994). There are two general categories of mandamus recognized by this Court, though some cases, such as the present, fall into both.

First, "[s]upervisory" mandamus is used "to correct an established trial court practice that significantly distorts proper procedure." *Horn*, 29 F.3d at 769, n.19 (collecting cases). Appellate courts have commonly recognized such "distortion" in two situations:  first, when a district court refuses to perform a required

mandatory procedure, and second, when a district court acts in excess of judicial power.

Second, "[a]dvisory" mandamus "presents a systemically important issue as to which this court has not yet spoken." *In re Atlantic Pipe Corp.*, 304 F.3d 135, 140 (1st Cir.2002). When advisory mandamus is at issue, a demonstration of irreparable harm is unnecessary. *In re Sterling-Suarez*, 306 F.3d 1170, 1172 (1st Cir. 2002).

As shown below, supervisory mandamus review is appropriate because the District Court's refusal to enter judgment violates clear and well-settled principles of civil practice and is irreparably harming Wells Fargo. Advisory mandamus review is also appropriate because unless this Court promptly reverses the District Court's Order, plaintiffs in this District and across the country will likely cite to the District Court's Order to demand that formal corporate resolutions be filed in their cases.

## II. WRIT RELIEF IS APPROPRIATE WHERE THE DISTRICT COURT REFUSES TO PERFORM A MANDATORY PROCEDURE OR ACTS IN EXCESS OF ITS JUDICIAL AUTHORITY.

### A. Refusal To Perform A Mandatory Procedure.

Mandamus has long been used "to command the court to act in a case where the court has jurisdiction and refuses to act." *Ex parte Newman*, 81 U.S. 152, 165

(1871) (*quoted in Moore v. U.S. ex rel. Lindmark*, 33 App. D.C. 597, 1909 WL

21394 (D.C. Cir. 1909)).

And specifically, mandamus is "warranted" when a district court "refuses to

render judgment or enter a decree in the case." *Ex Parte Newman*, 81 U.S. at 165.

*See also In re Charge of Judicial Misconduct*, 593 F.2d 879, 881 (9th Cir. 1979)

("If a judge fails or refuses to enter judgment in a particular case when the

circumstances require that judgment be entered, a petition for mandamus under the

All Writs Statute" is appropriate); *Steccone v. Morse-Starrett Products Co.*, 191

F.2d 197, 199 (9th Cir. 1951) ("mandamus is the appropriate remedy to compel

action in the event of failure or refusal of a court to enter judgment when the

situation of a case requires.").

## B.    Actions In Excess of Judicial Authority.

Supervisory mandamus is also "traditionally available" where "judicial

power has been exceeded, there is a threat of irreparable harm, and the underlying

order is palpably erroneous." *In re Sony BMG Music Entertainment*, 564 F.3d 1

(1st Cir. 2009) (citing *In re United States*, 426 F.3d 1, 5 (1st Cir. 2005)).

Indeed, this Court has recognized that the case for mandamus is most

"compelling" when "[i]t poses an elemental question of judicial authority." *Horn*,

29 F.3d at 770 (citing *In re Pearson*, 990 F.2d 653, 656 (1st Cir. 1993) (noting that

mandamus historically has been used to check judicial usurpation of power) and *In*

12

*re Attorney General*, 596 F.2d 58, 64 (2d Cir. 1979) (granting mandamus relief due in part to "separation of powers overtones")).

Thus, for example, mandamus relief has been granted when the district court acted without subject matter jurisdiction, *see Christopher v. Stanley-Bostitch, Inc.*, 240 F.3d 95, 99 (1st Cir. 2001), its order was not authorized by the Federal Rules of Civil Procedure, *see In Re Puerto Rico Elec. Power Authority*, 687 F.2d 501 (1st Cir. 1982)) or by statute, *see In re U.S.,* 426 F.3d 1 (1st Cir. 2005), undermined sovereign immunity, *see Horn*, 29 F.3d 754, deprived a party of its right to trial, *see Ramirez v. Rivera-Dueno*, 861 F.2d 328 (1st Cir. 1988), or imposed improper conditions on the dismissal of the action, *see In re Austrian, German Holocaust Litigation*, 250 F.3d 156 (2nd Cir. 2001). Mandamus relief also may be warranted to strike inappropriate or inflammatory language from orders. *See In re Williams*, 156 F.3d 86 (1st Cir. 1998); *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1188 n. 11, 1190–94 (8th Cir.1984).

Finally, irreparable harm may be established when there is "something about the order, or its circumstances, [that] would make an end-of-case appeal ineffectual or leave legitimate interests unduly at risk." *In re Recticel Foam Corp.*, 859 F.2d 1000 (1st Cir. 1988). Thus, "[i]rreparable harm can occur when the petitioners have no other adequate means of obtaining relief, . . . such as when the opportunity

to challenge the order on appeal may never arise." *In Re Perry*, 859 F.2d 1043 (1st Cir. 1988).

## III. THE DISTRICT COURT IMPROPERLY REFUSED TO PERFORM THE MANDATORY PROCEDURE OF ENTERING JUDGMENT.

The District Court's Order sets forth why it dismissed all of Plaintiff's claims. Five of Plaintiff's seven claims, the court found, were preempted by HOLA—thus they failed as a matter of law. A sixth "claim" (equitable relief) was "not an independent cause of action" (PA 24) and a seventh (breach of contract) "was flatly contradicted by the terms of the mortgage and note." PA 14. Thus, the District Court held that those claims, too, failed as a matter of law and could not be saved by amendment. Accordingly, the District Court "dismissed" all of Plaintiff's claims. PA 19, 21, 28, 32, 36.

Having found that there was no possible way for Plaintiff to allege a viable claim and that Wells Fargo had won the case, the District Court "denie[d] all relief." Fed. R. Civ. P. 58(b)(C); *see also L.Z. v. Parrish*, 733 F.2d 585, 587 (8th Cir. 1984) ("we have no difficulty in concluding that the Opinion was a decision that 'all relief shall be denied,'" where the Opinion "dismissed all of plaintiff's claims."). But rather than enter the judgment to which Wells Fargo is entitled, the District Court interposed a condition that it would do so only if Wells Fargo complied with its order to submit the corporate resolution. It stated that "[s]hould it do so, judgment will enter for Wells Fargo." PA 42.

Under these circumstances, the District Court was required to enter judgment for Wells Fargo. Because the District Court refused to perform its mandatory duty of entering judgment under circumstances where it was required to do so, mandamus relief is appropriate on this ground alone. *See Ex Parte Newman*, 20 L.Ed. at 879; *In re Charge of Judicial Misconduct*, F.2d 879; *Steccone, supra*, 191 F.2d at 199.

And, as explained next, mandamus relief is also appropriate on the independent ground that the District Court acted far in excess of its judicial powers by conditioning dismissal on a wholly unauthorized and unprecedented corporate resolution requirement.

## IV.    THE DISTRICT COURT EXCEEDED ITS JUDICIAL AUTHORITY.

As set forth above, a "compelling" case for mandamus relief exists where a district court acts in excess of its authority. *Horn*, 29 F.3d at 770. Here, not only has the District Court refused to enter judgment on what it recognized was a meritorious and dispositive preemption defense, it has threatened Wells Fargo with waiver of that defense unless the company submits a formal corporate resolution affirming what it has already asserted in its pleadings. This requirement—imposed because of the Court's personal, expressed view that HOLA preemption is an "obsolete" "technicality"—exceeds its judicial powers in numerous and serious ways.

15

### A.    The Supremacy Clause Of The United States Is Not A Technicality.

Characterizing HOLA federal preemption as an "obsolete" "technicality,"

the District Court challenged that, if Wells Fargo is the upstanding corporate

citizen it claims to be, it would "wish[ to] address Henning's claims on the merits

. . . at a trial before an American jury" since "it may be that Wells Fargo has done

nothing wrong." PA 41-42. And referencing only the preemption arguments that

the District Court had found to be legally meritorious, the District Court stated that

"[t]he disconnect between Wells Fargo's publicly advertised face and its actual

litigation conduct here could not be more extreme." PA 41-42.

But as our Supreme Court recently reiterated, "Federalism, central to the

constitutional design, adopts the principle that both the National and State

Governments have elements of sovereignty the other is bound to respect."

*Arizona v. United States*, 131 S.Ct. 2942, 2450 (2012). "[T]he existence of

two sovereigns [creates] the possibility that laws can be in conflict or at cross-

purposes." *Id.* Some principle or rule obviously is required to mediate that

conflict. That mediating principle emanates from the Supremacy Clause,

which provides that federal law "shall be the supreme Law of the Land," to be

universally followed, "any Thing in the Constitution or Laws of any State to

the contrary Notwithstanding." U.S. Const., Art. VI, cl. 2.

"There is no doubt" that the Supremacy Clause empowers Congress to "withdraw specified powers from the States," either expressly, by implication, or by occupying a field of regulation. *Arizona v. United States*, 131 S. Ct. at 2451. And where preemption exists, state laws or regulations must yield. *Id*.

Hardly an anachronism, preemption plays a vital role in contemporary society by eliminating uncertainties as to the source of applicable law, allowing individuals and enterprises to govern their affairs accordingly.

That is the case with HOLA, which was intended to address the fact that "[l]ocal institutions that had previously supplied funds to finance homes [had] ceased doing business or had discontinued such long-term loans, so that more than half the counties in the country . . . were without home-financing institutions." *Fidelity Fed. Sav. And Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 159-60 (1982). "In order to ameliorate these conditions, Congress enacted the HOLA, a radical and comprehensive response to the inadequacies of the existing state systems." *Id*. at 160 (internal quotation marks omitted). "Congress directed that, in regulating federal savings and loans, the [OTS] Board consider 'the best practices of local mutual thrift and home-financing institutions in the United States,' which were at that time all state-chartered." *Id.* (quoting § 5(a) of the HOLA, 12 U.S.C. § 1464(a)). "By so stating, Congress plainly envisioned that federal savings and loans would be governed

17

by what the Board—not any particular State—deemed to be the 'best practices.'" *Id*.

When the OTS promulgated its preemption regulation, 12 C.F.R. § 560.2, it did so to "[t]o enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden) . . . ." *Id*. at § 560.2(a). The OTS instructed federal savings associations to "extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities." *Id*. And the OTS determined that such state laws would not only include state statutes and regulations, but also "any . . . ruling, order or judicial decision." *Id*.

Turning federal preemption into a permissive, rather than mandatory, doctrine would destroy the certainty that the Constitution's framers deemed "central." And with regard to HOLA, it would override that "Congress [had] expressly contemplated, and approved, the [OTS] Board's promulgation of regulations superseding state law." *Fidelity Fed. Sav. and Loan*, 458 U.S. at 162.

Thus, the District Court's dismissal of HOLA preemption as "obsolete" and a "technicality" is wrong. Rather, federal preemption reflects Congress'

18

legislative determination as to the appropriate boundary between State and Federal authority—a determination that only Congress can make.

### B.    The Order Is Inconsistent With The Federal Rules Of Civil Procedure.

"[O]ne purpose of the Federal Rules generally is to promote uniformity." *U.S. v. Cole*, 496 F.3d 188 (2nd Cir. 2007).  That purpose is "thwarted" by judge-made rules "that impose additional requirements" that conflict with or otherwise frustrate the purposes of the Federal Rules. *Id.*  For this reason, district court local rules are limited to "procedural" matters that are "not inconsistent with" the Federal Rules.  *U.S. v. Klubock*, 832 F.2d 649 (1st Cir. 1987).  And any requirement that "unduly and unnecessarily frustrates the policies underlying the Federal Rules" thus "exceeds the rulemaking powers of the district court . . . ." *Hall v. C.I.R. (Dept. of Treasury)*, 805 F.2d 1511 (11th Cir. 1986).  A judge-made corporate resolution requirement is such an improper rule, as explained below.

In the Federal Rules of Civil Procedure, the United States Supreme Court, pursuant to its powers under the Rules Enabling Act, has specified when a party must act instead of its attorneys.  *See, e.g.,* Fed. R. Civ. P. 33(b) & 36(a)(4) (requiring parties to verify discovery responses); 30(b)(6) (requiring corporate party to designate agent to testify on its behalf).  The Federal Rules nowhere contemplate a client-affirmation requirement for motions, and even in the provisions that do require client verification (such as the discovery rules cited

previously), there is no requirement for a corporate party to submit a formal "corporate resolution" signed by its President and a majority of its Board.

And specifically with respect to motions to dismiss, Federal Rule of Civil Procedure 12(b)(6) sets forth the standards and procedural requirements a party's motion must satisfy to obtain dismissal of a plaintiff's complaint.

Wells Fargo satisfied those standards, as the District Court's own Order recognized. Thus, it was improper for the Court to graft an additional corporate resolution or affirmation requirement on dismissal that is not authorized by—and is inconsistent with—Wells Fargo's entitlement to relief under Rule 12(b)(6). *See, e.g., Oliveras v. Wilkins*, 2010 WL 423107 (S.D.N.Y. 2010) ("If the plaintiff . . . satisfies those standards [under Rule 12(b)(6)], it would be improper to impose judge-made and ad hoc pleading requirements in addition to those imposed by the federal rules."); *cf. Clark v. Universal Builders, Inc.*, 501 F.2d 324 (7th Cir. 1974) (court order of "dismissal subject to reinstatement if plaintiffs appealed was a highly improper attempt at coercing plaintiffs into waiving their right to appeal and as such was error.").

The corporate resolution requirement also is inconsistent with Rule 11, which contemplates that attorneys may sign motions on their clients' behalf and, in so doing, are certifying the motions have a proper purpose and assert positions warranted by law and fact. Fed. R. Civ. P. 11(a), (b). Wells Fargo's motion to

dismiss satisfied this requirement. The District Court articulated no valid basis for imposing an additional client-affirmation requirement after Wells Fargo's counsel had signed the pleading as contemplated by the Rule.

The Court's requirement to submit a corporate resolution also is not without consequences. This Court can take notice that requiring Wells Fargo to submit the District Court's Order to Wells Fargo's President and Board of Directors to ratify the assertion of a defense in one of the bank's litigations is burdensome and highly invasive and disruptive of the bank's operations.

Nor is there any valid basis for it, as the Supreme Court has made clear that a party "is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Gonzalez v. U.S.*, 553 U.S. 242, 247 (2008) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962)). This includes being bound to "decisions by counsel . . . as to what arguments to pursue . . . ." *Id.* at 248. *See also In re Palumbo Family Ltd. Partnership*, 182 B.R. 447, 473 (E.D. Va. 1995) ("As agents of their clients, attorneys are regarded as having either express or apparent authority to sign and file documents on their clients' behalf").

This Court also recently recognized that "[a]ttorneys act for their clients," and even "the neglect of an attorney acting within the scope of his or her authority is attributable to the client." *Nansamba v. North Shore Medical Center, Inc.*, ___

F.3d ___, 2013 WL 4051886, at *3 (1st Cir. Aug. 12, 2013). *Nansamba* applies with greater force in this case, where it is not neglect but the meritorious "conduct of [Wells Fargo's] skilled attorneys" (PA 37) that the Court found to be at issue in this case. In these circumstances, and against the backdrop of the uniform, longstanding case law holding that attorneys act for their clients, the District Court's corporate resolution requirement is arbitrary and unauthorized.

Indeed, the corporate resolution requirement is invasive of the attorney-client relationship, and interferes with the orderly and proper functioning of the litigation process. As the Supreme Court has observed, "[g]iving the attorney control of trial management matters is a practical necessity. The adversary process could not function effectively if every tactical decision required client approval." *Gonzalez*, 553 U.S. at 249.

Finally, the Court's Order finds no authority in its "inherent power" to manage cases. As this Court has stated, "the long-recognized inherent 'supervisory' power of the court to manage its business" does not give courts license to deviate from established law and procedure. *In re U.S.*, 426 F.3d at 9. "To allow otherwise would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing." *Id.* (internal quotation marks omitted) (citing *Bank of Nova Scotia v. U.S.*, 487 U.S. 250, 254 (1988)).

In sum, the District Court's Order not only imposes a client-affirmation requirement where none exists, it creates a new "corporate resolution" procedure that is not authorized by and has no grounding in the Federal Rules. In these circumstances, mandamus relief is appropriate to rectify the District Court's Order exceeding its judicial power. *See, e.g., In re Puerto Rico*, 687 F.2d 501 (granting mandamus relief where court ordered party to pay translation costs for documents produced in discovery that was not authorized by the Federal Rules); *In re U.S.,* 426 F.3d 1 (granting mandamus relief where district court in criminal trial created new jury selection procedure without gaining approval as required by statute).

### C.    The Order Adds Requirements For The Assertion Of HOLA Preemption Not Authorized By Congress.

By refusing to enter judgment without a formal corporate resolution from Wells Fargo's President and Board, the District Court has imposed a new substantive requirement on the preemption defense not contemplated by Congress or the OTS. This usurpation of legislative authority offends fundamental principles of the Separation of Powers and Federalism.

The Separation of Powers doctrine confines the judiciary, legislative, and executive branches to their respective spheres. Only Congress—which has the sole power to legislate for the United States—may allocate the boundary line between State and Federal legislative power. Assuming Congress acts within its

constitutional authority, the judiciary is obligated to defer to and enforce Congress' judgment.

To that end, the judicial branch cannot impose obligations that conflict with federal statutes, even if it believes there are sound policy reasons to do so. *In re Austrian*, 250 F.3d at 163 ("The doctrine of separation of powers prohibits the federal courts from excursions into areas committed to the Executive Branch or the Legislative Branch.").

As the Supreme Court has explained: "Whatever temptations the statesmanship of policy-making might wisely suggest, the judge's job is to construe the statute—not to make it better . . . . The judge must not read in by way of creation, but instead abide by the duty of restraint, the humility of function as merely the translator of another's command." *Jones v. Bock*, 549 U.S. 199 (2007) (internal citations omitted).

Here, the District Court violates the Separation of Powers when it legislates a new corporate resolution requirement that is not authorized in HOLA or required by the OTS to assert HOLA preemption, and in so doing conflicts with OTS' intent to occupy the field.

The Court's Order also frustrates basic Federalism principles. Federalism, as explained above, respects the sovereignty of the federal and state governments in their respective spheres, but through the Supremacy Clause, empowers Congress

to occupy a field of regulation through preemption. *Arizona*, 131 S.Ct. at 2450. And where, as here, a federal agency duly authorized by Congress has chosen to occupy the field of lending regulation through HOLA, state law claims have no place.   The Court has no power to eschew federal preemption through imposing arbitrary and burdensome obstacles to a litigant's ability to raise the defense in a proper pleading.   Nevertheless, the District Court's Order compels Wells Fargo, if it does not submit a corporate resolution, to litigate the very state law claims that the District Court has found are preempted under the governing federal law.

In these circumstances, mandamus relief is essential.   See, e.g., *Horn*, 29 F.3d at 770 (granting mandamus review because "the issue bears importantly on the relationship between the Judicial Branch and the Executive Branch."); *In re Austrian*, 250 F.3d at 163 (granting mandamus relief where district court improperly conditioned dismissal on requirements that encroached on Executive branch's foreign policy powers); *Brotherhood Of Maintenance Of Way Employees Division/IBT v. Union Pacific R. Co.*, 460 F.3d 1277 (10th Cir. 2006) (granting mandamus relief where the district court placed conditions on injunctive relief that were "inconsistent with the remedial scheme . . . set forth in the RLA").

## V.    WITHOUT MANDAMUS REVIEW, WELL FARGO WILL SUFFER CONTINUING IRREPARABLE HARM.

There are multiple independent reasons why the irreparable harm requirement for supervisory review is satisfied here.

First and foremost, Wells Fargo began to suffer irreparable harm the moment the District Court refused to enter judgment for Wells Fargo, when it was required to do so. *See In re Sony BMG Music Entm't*, 564 F.3d at 4 (supervisory mandamus review is appropriate when a district court substantially departs from "an established trial court practice that significantly disports proper procedure"); *See also In re Charge of Judicial Misconduct*, 593 F.2d at 881 (finding mandamus to be the appropriate remedy for a court's refusal to enter judgment).

Second, this Court recognizes that irreparable harm is established when the petitioner "has no ready way to appeal" from the order being challenged. *In re U.S.,* 426 F.3d at 3 (permitting mandamus review of assertedly impermissible jury selection process because government could not appeal either conviction or acquittal). *See also Steccone*, 191 F.2d at 199 (concluding "mandamus is the appropriate remedy to compel action in the event of failure or refusal of a court to enter judgment when the situation of a case requires . . . because no remedy by way of appeal exists.").

Wells Fargo lacks an adequate appellate remedy absent mandamus review. If Wells Fargo were to submit to the District Court's coercive order, judgment would be entered on its behalf. Under those circumstances, it would lack standing to appeal. Conversely, if Wells Fargo refused to comply but

prevailed at trial, judgment likewise would be entered in its favor.  Again, Wells Fargo would lack standing to appeal.

The only circumstances in which Wells Fargo could conceivably appeal would be if it were to lose at trial after declining to comply with the Court's Order.  Although Wells Fargo could appeal from the resulting adverse judgment, that remedy would be inadequate on its face.  Wells Fargo would have been forced to defend through trial an action that, but for the District Court's improper condition in which the Court sought to compel Wells Fargo to waive preemption and try the case on the merits before a jury (Order at 42), Wells Fargo was entitled to have the case dismissed as a matter of law at the outset without a trial.

For each of these reasons, Wells Fargo has established the requirement of irreparable harm, making supervisory mandamus review appropriate.

## VI.    WITHOUT MANDAMUS REVIEW, OTHER LITIGANTS ARE LIKELY TO SEEK SIMILAR ORDERS IN THEIR CASES.

Advisory mandamus review is also appropriate.  The District Court's Order has been published, *see* ___ F. Supp. 2d ___, 2013 WL 5229837 (D. Mass. Sept. 17, 2013), and is being talked about in the press.[2]  There is no limiting principle to the Order.  If allowed to stay on the books, the District

---

[2] PA 43-54.

Court's Order undoubtedly will prompt copycat demands for corporate resolutions in cases where corporate parties assert purportedly disfavored claims and defenses through their attorneys.[3]

A mandamus relief will constrain other litigants from pursuing such corporate resolution orders in their cases. *See In re U.S.*, 426 F.3d at 5 (finding "[a]dvisory, as well as supervisory mandamus" to be "wholly appropriate" when the District Court's "action contravenes or unlawfully supplements a jury plan adopted by the district court as a whole and approved by the review panel" and would likely prompt litigants in other cases to file motions seeking the same relief); *In re Atlantic Pipe Corp.*, 304 F.3d 135, 140 (1st Cir. 2002) (permitting advisory mandamus to review of the "extent of a trial court's power to order mandatory mediation" because the issue was "capable of significant repetition prior to effective review").

---

[3] This is one of the reasons why it is the party's lawyer and not the party who "has-and must have-full authority to manage the conduct of the trial" proceedings, *Taylor v. Illinois*, 484 U.S. 400, 417-18 (1988), why the party is "deemed bound by the acts of his lawyer-agent" *Link*, 370 U.S. at 634, and why the decisions by trial counsel, rather than the parties who employ them, generally are given effect in court. *Jones v. Barnes*, 463. U.S. 745, 751 (1983).

## CONCLUSION

For the reasons expressed, this Court should grant a writ of mandamus

vacating the District Court's "corporate resolution" requirement and directing the

Court to promptly enter judgment in favor of Petitioner, Wells Fargo Bank, N.A.

DATED:  September 30, 2013

Respectfully submitted,

SEYFARTH SHAW LLP

Arthur G. Telegen (Appeals Bar No. 19002)
David M. Bizar (Appeals Bar No. 1145583)
James M. Harris

Attorneys for Petitioner
Wells Fargo Bank, N.A.

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT
No. _____

_____

**CERTIFICATE OF SERVICE**

_____

I, David M. Bizar, counsel for Petitioner, Wells Fargo Bank, N.A., hereby

certify that on September 30, 2013, I served copies of the foregoing Petition for

Writ of Mandamus, by U.S. Mail, on all parties to the proceeding in the trial court

and on the trial-court judge and addressed as follows:

Chambers
The Honorable William G. Young
John Joseph Moakley U.S. Courthouse
1 Courthouse Way
Boston, MA  02210

Valeriano Diviacchi, Esq.
11 Beach Street, #1A
Boston, MA  02111-2352

Frank Saia, Esq.
273 State Street, 2nd Floor
Springfield, MA  01103

_____
David M. Bizar

## ADDENDUM

## TABLE OF CONTENTS

Memorandum and Order, dated          PA 00001
September 17, 2013

*Massachusetts Lawyers Weekly*,          PA 00043
September 20, 2013, article entitled
"Judge dares bank to waive preemption
defense"

Articles entitled "Federal Judge          PA 00048
Challenges Wells Fargo To Do The
Right Thing."

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOSEPH HENNING,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>WACHOVIA MORTGAGE, FSB, n/k/a<br>WELLS FARGO BANK, N.A.,[1]<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CIVIL ACTION<br>NO. 11-11428-WGY

MEMORANDUM AND ORDER

YOUNG, D.J.                                September 17, 2013

Because it replaces with federal regulation the vision of democratically elected state legislators as to what is best for their citizens, federal "[p]reemption is strong medicine, not casually to be dispensed." Brown v. United Airlines, Inc., 720 F.3d 60, 71 (1st Cir. 2013) (quoting Grant's Dairy—Maine, LLC v. Comm'r of Me. Dept. of Agric., Food, and Rural Res., 232 F.3d 8,18 (1st Cir. 2000)). Moreover, the law of preemption is much of a muddle. See, e.g., In re Welding Fume Prods. Liab. Litig., 364 F. Supp. 2d 669, 681 n.14 (N.D. Ohio 2005); Michael P. Moreland, Preemption as Inverse Negligence Per Se, 88 Notre Dame L. Rev. 1249, 1252-77 (2013); Ashutosh Bhagwat, Wyeth v. Levine and Agency Preemption: More Muddle or Creeping to Clarity?, 45 Tulsa L. Rev. 197, 229 (2009). In some areas—e.g., ERISA—its sweep is so broad as to be overwhelmingly rejected by scholars, leaving obedient lower courts poking around the periphery and calling for change. See DeFelice v.

---

[1] Effective November 1, 2009, Wachovia Mortgage, FSB merged with and into Wells Fargo Bank, N.A. Def.'s Mem. Supp. Mot. Dismiss 2, ECF No. 88.

PA000001

Aetna U.S. Healthcare, 346 F.3d 442, 459-60 (3d Cir. 2003) (Becker, J., concurring) (quoting Andrews-Clark v. Travelers Ins. Co., 984 F. Supp. 49, 52-53 (D. Mass. 1997)). In others—e.g., airline deregulation—the need for uniform air transit regulation works in common-sense fashion to displace contrary local initiatives. See DiFiore v. Am. Airlines, Inc., 646 F.3d 81, 88 (1st Cir. 2011), cert. denied, 132 S. Ct. 761 (2011); Brown, 720 F.3d at 66. This case falls somewhere in between.

## I.    INTRODUCTION

Joseph Henning ("Henning") brought suit against Wells Fargo Mortgage, N.A. ("Wells Fargo")[2] for claims arising from a mortgage-loan agreement. Pl.'s Opp'n Mot. Dismiss ("Pl.'s Mem. Opp'n") 2, ECF No. 92. After amending the complaint twice, Henning alleged seven claims against Wells Fargo: (1) unjust enrichment; (2) equitable relief; (3) violation of the implied covenant of good faith and fair dealing ("implied covenant"); (4) consumer protection violation under Massachusetts General Laws chapter 93A ("chapter 93A"); (5) negligence based on Massachusetts statutory duties; (6) negligence based on Federal statutory duties; and (7) breach of contract. Third Am. Compl. Jury Demand ("Third Compl.") ¶¶ 53-73, ECF No. 73. Wells Fargo moved to dismiss the case arguing that Henning has failed to

---

[2] Although Henning brought this action against Wachovia, F.S.B., "Wells Fargo, N.A. is the successor by merger to Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB., f/k/a World Savings Bank, F.S.B. . . . ." In re Currie, No. 11-17349-JNF, 2013 WL 3379539, at *1 (Bankr. D. Mass. July 8, 2013) (Feeney, Bankr. J.).

PA000002

state any claims upon which relief may be granted under Federal
Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), and also
that any state-law claims are preempted by the Home Owners' Loan
Act ("HOLA"), 12 U.S.C. §§ 1461-1470.  Def.'s Mem. Supp. Mot.
Dismiss ("Def.'s Mem. Supp.") 2, ECF No. 88.  Henning opposed
the motion to dismiss.  Pl.'s Mem. Opp'n 1.

### A.    Procedural Posture

On or around May 15, 2009, Henning filed the original
complaint against Wachovia Mortgage Corporation ("Wachovia"),
now Wells Fargo, in the Massachusetts Superior Court sitting in
and for the County of Middlesex.  Notice Removal ¶ 1, ECF No. 4-
1.  Wachovia removed the case to this court on June 19, 2009,
id. at 5, where it was initially referred to Judge Ponsor,
Elect. Notation, ECF No. 2.  Wachovia answered the complaint on
July 17, 2009, Answer Affirm. Defense, ECF No. 7, and moved for
summary judgment on October 20, 2009, Mot. Summ. J., ECF No. 24.
Henning's opposition was filed on November 1 2009, Pl.'s Opp.
Mot. Summ. J., ECF No. 33.[3]  Before a ruling on summary judgment
was issued, Henning amended his complaint with leave of the
court on March 2, 2010. Am. Compl./Class Action Compl./Jury
Demand, ECF No. 51.

---

[3] Wachovia filed a reply to Henning's response on November
9, 2009, Reply Br. Supp. Mot. Summ. J., ECF No. 39, and Henning,
in return, filed a sur-reply one week later, Pl.'s Sur-Reply
Def.'s Mot. Summ. J., ECF No. 42.

PA000003

On the same day as the amended complaint was filed, Judge Wolf consolidated Henning's case with another action stemming from mortgages "for which Wachovia was allegedly responsible." Bettinelli v. Wells Fargo Home Mortg., Inc., No. 09-11079-MLW, 2010 WL 2998608 (D. Mass. July 23, 2010) (Wolf, J.). Judge Wolf was assigned the consolidated case. Id. In August, Henning filed a second amended complaint. Second Am. Compl./Jury Demand, ECF No. 58.

On August 19, 2010, United States Judicial Panel on Multidistrict Litigation transferred the case to the Northern District of California. Conditional Transfer Order (CTO-5), ECF No. 60. The consolidated case reached a settlement, and because Henning timely opted out of the May 17, 2011 class-action settlement in that district, Judge Fogel ordered the case transferred back to the District of Massachusetts on June 9, 2011. Order Granting Pl.'s Mot. Vacate J. Transfer Case, ECF No. 69.

Henning filed a third amended complaint in the District of Massachusetts on August 29, 2012. Third Compl. The case was assigned to this Session after Judge Wolf took senior status on January 2, 2013. Clerk's Note, ECF No. 82. This Court heard the motion to dismiss at issue on January 29, 2013. Clerk's Note, ECF. No. 94.

**B.   Factual Allegations**

4

PA000004

Henning alleges the following facts.  Henning executed a mortgage loan with World Savings Bank ("World") in 2006 in the amount of $215,250, and an Equity Credit Line of $43,000 in the same year.  Third Compl. ¶¶ 3, 52.  Wells Fargo is the successor-in-interest to this loan, having merged with Wachovia, which had previously merged with World.  Id. ¶ 3; Mem. Law Supp. Mot. Summ. J. 2, ECF No. 25.  The loan was a "stated income" loan,[4] and World allegedly never "determin[ed] the reasonableness" of Henning's income as stated on the loan application before approving him, Third Compl. ¶ 14, rather, World considered only whether he could make the initial monthly payment, id. ¶ 45.  Moreover, during the loan application process, World calculated his debt-to-income ("DTI") ratio without deducting business expenses Henning incurred as a salesman from his income.  Id. ¶¶ 4-6.  This classification, Henning alleged, runs counter to generally accepted underwriting procedure and resulted in a real DTI ratio of 94.5%, which exceeds the allowable DTI ratio under customary subprime lending guidelines.  Id.  In 2008, Henning defaulted on his obligations, and currently faces foreclosure.  Id. ¶ 10.  Henning also agreed to a loan modification in 2008, allegedly under the duress of

---

[4] Stated income loans do not require the borrower to provide "documentation of his or her income."  Commonwealth v. Fremont Inv. & Loan, 452 Mass. 733, 736 n.7 (2008).

5

default and impending foreclosure, id. ¶ 51, with terms similar to the 2006 loan. Id. ¶ 50.

Henning further alleged that World failed to comply with certain statutory requirements during the application process. Specifically, he alleged that several forms required under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601-17, are absent from his loan file, including a Good Faith Estimate ("GFE"), a Servicing Disclosure Statement, and a Notice of Assignment, Sale, or Transfer of Servicing Rights. Id. ¶ 9. Henning also alleged that the Initial Truth in Lending Statement & Itemization of Amount Financed form required under the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601 et seq, and its implementing regulations, 12 C.F.R. §§ 225.1 et seq ("Regulation Z"), is also missing from the file. Id. Indeed, according to Henning's allegations, World was unable to comply with TILA because the "subject loans are not actually indexed." Id. ¶ 49.

Henning's loan is of the Payment Option Arm ("POA") variety, known at World as the "Pick-A-Payment" program. Id. ¶ 15. By "mathematical manipulation of interest rates and . . . back-ending most of the principle [sic]," lenders make the initial payments on these types of loans artificially low, allowing "almost anyone" to qualify. Id. ¶ 45. The adjustable rate note at issue allegedly fails adequately to disclose the possibility of negative amortization. Id. ¶ 29. Because of

6

PA000006

this negative amortization, Henning stated that he, among many
other borrowers, faced initially low payments which would later
be some three to four times higher, sometimes within a few
months.  Id. ¶ 46.  Wells Fargo, as successor in interest to
World, allegedly had "unlimited discretion" as to the index
which determines the adjustable interest rate under the note.
Id. ¶ 31.

   Unsophisticated consumers like Henning were subject to
purportedly aggressive and predatory marketing of POA loans.
Id. at ¶ 45.  World's advertising was allegedly deceptive in
that it focused on the low initial monthly payments without
disclosing the risks of negative amortization and the adjustable
rate.  Id. ¶¶ 17-18.  This purported deception was furthered by
the loan documentation which used language that, according to
Henning, World knew or should have known was impenetrable to
consumers in order intentionally to obscure the terms and
consequences of the transaction.  Id. ¶¶ 29-32.

   World approved Henning's loan likely knowing, Henning
alleges, that he did not qualify based on information he had
provided to them.  Id. ¶ 14.  World incentivized such approval
by offering commission pay to their underwriters and loan
officers.  Id. ¶ 48.  World, Henning alleges, must have known
that Henning would likely default, but proceeded to approve the

7

loan anyway, without considering the falling real estate market and other loan products more appropriate for him.   Id. ¶ 13.

Henning alleges that as a result of World's actions, he has suffered the loss of equity, damage to his credit, and he faces impending foreclosure with resultant emotional distress.   Id. ¶ 10.   He further alleges that because of World's deceptive practices in advertising and the use of impenetrable language in mortgage documentation, Henning lost the opportunity to "comparison shop" for more appropriate loan alternatives, id. ¶ 33, and has incurred unlawful compound interest, id. ¶ 37.

C.   **Federal Jurisdiction**

Jurisdiction is proper under 28 U.S.C. section 1332(a) as the amount in controversy exceeds $75,000 and the parties are citizens of different states.

As to the amount in controversy, the face value of the loan well exceeds $75,000, id. ¶ 3, and Henning originally pled $80,000 in damages, Commw. Mass Superior Ct. Dep't. Trial Ct. Woburn, Ex. 3, Civil Action Cover Sheet, ECF No. 4-3.   Complete diversity exists because Henning is a citizen of Massachusetts, Third Compl. ¶ 1, and Wachovia, the relevant party at the time this action was filed, is a federal savings bank with its home

8

PA000008

office in Nevada,[5] Notice Removal ¶ 3.  See 12 U.S.C. § 1464(x)
(A "[f]ederal savings association shall be considered to be a
citizen only of the State in which such savings association has
its home office.").  Accordingly, this Court has jurisdiction
over the matter.

## II.  ANALYSIS

### A.  Legal Standard

A pleading must set forth "a short and plain statement of
the claim showing that the pleader is entitled to relief." Fed.
R. Civ. P. 8(a)(2).  In order to survive a motion to dismiss
under Rule 12(b)(6), a plaintiff must plead sufficient factual
matter, accepted as true, "to state a claim to relief that is
plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.
544, 570 (2007).  In addition to accepting all facts in the
complaint as true, the Court must draw reasonable inferences in
the plaintiff's favor.  Langadinos v. Am. Airlines, Inc., 199
F.3d 68, 69 (1st Cir. 2000).

While a probability that the defendant is liable is not
required, a plausible claim poses facts that, taken as true,
give rise to a "reasonable expectation that discovery will
reveal" liability.  Twombly, 550 U.S. at 556.  Neither "naked

---

[5] Diversity jurisdiction is determined by considering "the
state of facts that existed at the time of filing." Grupo
Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 571 (2004).

PA000009

assertion[s]" of misconduct, id. at 557, nor "formulaic recitation" of the elements of a claim will suffice, id. at 555.

**B.   Federal Preemption**

Wells Fargo urges that the Court should dismiss all of Henning's substantive state-law claims because they are preempted by HOLA and its implementing regulations, 12 C.F.R. §§ 500-99, which, according to Wells Fargo, occupied the field of federal lending regulation at times relevant to this litigation. See Def.'s Mem. Supp. 11.  Henning argues that this Court should interpret HOLA preemption in light of the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat. 1376 (2010) ("Dodd-Frank"), which reduces the federal government's preemptive authority under HOLA.  See Pl.'s Mem. Opp'n 18 (citing Dodd-Frank § 1044).  Henning also argues that his state-law claims are not preempted because such claims complement, rather than supplant, federal regulation.  Id. at 17-18.

**1.   Statutory Background**

As a response to the Great Depression, when nearly half of all home loans were in default and credit was scarce, Congress enacted HOLA as "a radical and comprehensive response to the inadequacies of the existing state systems" of mortgage regulation.  See Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta, 458 U.S. 151, 159-60 (1982) (quoting Conference of Fed.

10

Sav. and Loan Ass'ns v. Stein, 604 F.2d 1256, 1257 (9th Cir.
1979)).  HOLA initially created the Federal Home Loan Bank Board
and granted its director broad authority to regulate "the powers
and operations of every Federal savings and loan association
from its cradle to its corporate grave." Id. at 145 (quoting
Cal. v. Coast Fed. Sav. and Loan Ass'n, 98 F. Supp. 311, 316
(S.D. Cal. 1951)).  When Congress amended HOLA in 1989, it
transferred this power to the Office of Thrift Supervision
("OTS").  Dixon v. Wells Fargo Bank, N.A., 798 F. Supp. 2d 336,
353 n.6 (D. Mass. 2011) (citing 12 U.S.C. § 1462a).  As the
Supreme Court has stated, "[i]t would have been difficult for
Congress to give the [OTS] a broader mandate" pertaining to loan
regulation authority under HOLA.  See de la Cuesta, 458 U.S. at
161 (first alteration in original) (quoting Glendale Fed. Sav.
and Loan Ass'n v. Fox, 459 F. Supp. 903, 910 (C.D. Cal. 1978))
(internal quotation marks omitted); 12 C.F.R § 500.1 (granting
authority under HOLA to OTS and allowing it broad powers to
"regulate and examine savings associations").[6]

Under this broad grant of authority, OTS issued regulations
which purport to preempt state law in the areas of federal

---

[6] The loans at issue in this case originated in 2006 by
World which was chartered as a federal savings bank, and was
thus subject to OTS authority.  Aff. Billie Charles Supp. Mot.
Summ. J., Ex. B, Charter World Sav. Bank, F.S.B. §§ 1-4
("Charter"), ECF No. 28-2; Aff. Billie Charles Supp. Mot. Summ.
J., Ex. A, Certificate of Corporate Existence, ECF No. 28-1.

PA000011

savings regulation.  Under 12 C.F.R. section 545.2, OTS declared

its exclusive authority "to regulate all aspects of the

operations of Federal savings associations," which was

"preemptive of any state law" addressing the same.  Under 12

C.F.R. section 560.2(a) ("section 560.2(a)"), OTS signaled its

authority to "occup[y] the entire field of lending regulation,"

in order to "facilitate the safe and sound operation of federal

savings associations," and with the intent to give them "maximum

flexibility to exercise their lending powers in accordance with

a uniform federal scheme."  Id. § 560.2(a)

     The OTS regulations set forth a test to determine if HOLA

preempts a state law.  Id. § 560.2.  A court must first consider

whether the state law at issue is one of the illustrative

examples which are definitively preempted under 12 C.F.R.

section 560.2(b) ("section 560.2(b)").  Id.  Preempted claims

under paragraph (b) are numerous and include those related to

licensing, terms of credit, disclosure requirements, and

advertising.  Id.

     If not preempted by paragraph (b), the Court must consider

whether the law in question "affects lending."  Dixon, 798 F.

Supp. 2d at 354 (citing Lending and Investment, 61 Fed. Reg.

50,951, 50,966 (Sept 30, 1996)).  If it does, a presumption

arises that the law is preempted by HOLA, but the presumption

may be rebutted by showing that the state law fits into the list

PA000012

of laws not preempted under 12 C.F.R. section 560.2(c) ("section 560.2(c)"), is consistent with the policy underlying section 560.2(a), or affects lenders only incidentally. Id. Such laws include contract, tort, criminal, and homestead laws, 12 C.F.R. § 560.2(c), but the area of exception ought be interpreted narrowly with "any doubt . . . resolved in favor of preemption." Sovereign Bank v. Sturgis, 863 F. Supp. 2d 75, 92 (D. Mass. 2012) (Woodlock, J.) (quoting 61 Fed. Reg. at 50,966-67) (internal quotation marks omitted).

   After the mortgage meltdown, however, Congress rethought the wisdom of the sweeping preemptive power it had conferred on the OTS.  Dodd-Frank "significantly diminished the extent to which HOLA and its implementing regulations may preempt state law." Id. at 91 n.9 (citing Dodd-Frank §§ 1044, 1046 (limiting HOLA preemption to conflict, rather than field, preemption)); see also Roderick M. Hills, Jr., Exorcising McCulloch: The Conflict-Ridden History of American Banking Nationalism and Dodd-Frank Preemption, 161 U. Pa. L. Rev. 1235, 1287 (2013) (noting that Dodd-Frank likely repudiates field preemption). Courts have uniformly held, however, that the provisions of Dodd-Frank are not retroactive, and HOLA preemption applies to mortgages originated before either July 21, 2010 or July 21, 2011. Compare, e.g., id. at 1291 (effective date of July 21, 2011); Molosky v. Washington Mut., Inc., 664 F.3d 109, 113 n.1

13

PA000013

(6th Cir. 2011) (same); <u>Williams</u> v. <u>Wells Fargo Bank, N.A.</u>, No. 11-21233-CIV, 2011 WL 4901346, at *7 n.6 (S.D. Fla. Oct. 14, 2011) (same) <u>with</u> <u>Settle</u> v. <u>World Sav. Bank, F.S.B</u>, No. ED CV 11-00800 MMM (DTBx), 2012 WL 1026103, at *14 (C.D. Cal. Jan. 11, 2012) (effective date of July 21, 2010); <u>Copeland-Turner</u> v. <u>Wells Fargo Bank</u>, 800 F. Supp. 2d 1132, 1137-38 (D. Or. 2011) (same); <u>see also</u>, <u>Currie</u>, 2013 WL 3379539, at *1-5 (applying field preemption under HOLA to a 2006 mortgage loan).[7]  This Court follows suit.  Because the loans at issue originated before either date, Third Compl. ¶¶ 3, 50, the appropriate preemption standard to apply to Henning's claims is that extant prior to the effective date of Dodd-Frank.

### 2.  Count VII: Breach of Contract

Henning alleges that World breached its obligations under the relevant mortgages and notes by failing "to pay principal on the subject loans" as Henning made his bi-weekly payments.  <u>See</u> Third Compl. ¶ 73; <u>see also</u> <u>id.</u> ¶ 46.  While HOLA does not preempt Count VII, this Court dismisses it as Henning has failed plausibly to state a breach of contract.

---

[7] Though there appears to be a dearth of circuit precedent on the issue, this Court need not weigh in on the debate regarding whether Dodd-Frank became effective as to mortgages on July 21, 2010 or 2011 because the loans at issue in the case originated in 2006, and the modification was in 2008.  Third Compl. ¶¶ 3, 50.

14

Contract law does not necessarily "impose requirements" on lenders, and thus does not fall within the ambit of section 560.2(b). E.g., Sturgis, 863 F. Supp. 2d at 94; In re Ocwen Loan Servicing, LLC. Mortg. Servicing Litig., 491 F.3d 638, 645 (7th Cir. 2007). A claim for breach of contract seeks to enforce any contracting party's "duty to honor promises made." Dixon, 798 F. Supp. 2d at 358. Because Henning's claim deals broadly with the relationship between the mortgagor and mortgagee, and the manner in which payments are allocated under the mortgage, it "affects lending," giving rise to a rebuttable presumption of preemption. Sturgis, 863 F. Supp. 2d at 94; see 61 Fed. Reg. at 50,966.

The presumption of preemption is rebutted in this case. Contract law is not preempted so long as it only "incidentally affect[s] . . . lending operations." 12 C.F.R. § 560.2(c). Many courts have held that breach of contract claims are not preempted where they do not seek to impose requirements on lenders regarding the substance of the contract, but only hold the lender true to its word. E.g., Sturgis, 863 F. Supp. 2d at 94-95; In re Ocwen Loan Servicing, 491 F.3d at 645; McAnaney v. Astoria Fin. Corp., 665 F. Supp. 2d 132, 164 (E.D.N.Y. 2009); Reyes v. Downey Savings and Loan Ass'n, F.A., 541 F. Supp. 2d 1108, 1114 (C.D. Cal. 2008); cf. Dixon, 798 F. Supp. 2d at 358 (holding promissory estoppel claim only affects lending

15

PA000015

operations incidentally because it imposed on the defendant-lender only those obligations applicable to all businesses and contracting parties).

Here, Henning seeks only to hold Wells Fargo to obligations its predecessor in interest purportedly agreed to: the payment of principal coincident with Henning's bi-weekly payments. See Third Compl. ¶ 73. Seeking to hold a contracting party to its word is not unique to the mortgage-lending realm. See Dixon, 798 F. Supp. 2d at 358. As his contract claim only "incidentally affect[s]" World's lending operations, it is not preempted by HOLA. See 12 C.F.R. § 560.2(c).

While not preempted by HOLA, Henning fails to state a plausible breach of contract claim. Henning's allegation that World breached an obligation to apply his monthly payment to the principal loan amount is flatly contradicted by the terms of the mortgage and note.

In the absence of fraud, a signatory to a contract is bound by its terms whether he has read and understood it or not. See Willens v. Univ. of Mass., 570 F.2d 403, 405 (1st Cir. 1978) (citing Spritz v. Lishner, 355 Mass. 162, 164 (1969)). At the motion to dismiss stage this Court may take notice of public documents, such as the mortgage and note here, which bear on the merits of Henning's claims. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); see also In re Smith-Pena, 484 B.R. 512, 515

16

PA000016

n.1 (Bankr. D. Mass 2013) (Bailey, Bankr. J.).  When such documents contradict allegations in the complaint, the documents trump the allegations.  See Clorox Co. P.R. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 32 (1st Cir. 2000) (citing Northern Ind. Gun & Outdoor Shows, Inc., v. City of South Bend, 163 F.3d 449, 454 (7th Cir. 1998)).

In Davis v. World Sav. Bank, F.S.B., the court dismissed a breach of contract claim predicated on the defendant-lender's failure to apply any portion of the plaintiff-borrower's initial monthly payments to the principal of the subject POA-mortgage loan.  806 F. Supp. 2d 159, 172 (D.D.C. 2011).  The note stated that initial monthly payments might not be sufficient to cover accruing interest, creating deferred interest which itself would be added to the principal and accrue interest, and that payments would adjust annually accordingly.  Id. at 173.  These statements indicated to the court that the lender had never agreed to apply any portion of the initial monthly payments to principal at all.  Id.  Because the borrower's claims that the lender "fail[ed] to apply any of the initial monthly payments to principal [were] contrary to the express terms of the Note," the claim was dismissed.  Id.

The allegations and express terms at issue here are strikingly similar to those the court considered in Davis.  In the original mortgage, World promised to apply Henning's bi-

PA000017

weekly payments to the principal amount only after applying it
to: (1) prepayment charges under secured notes; (2) advances
owed to the lender; (3) amounts due under the "Escrow Accounts"
provision in the mortgage agreement; (4) interest due under
secured notes; and (5) deferred interest due under secured
notes.  Aff. Lisa Beens Supp. Mot. Summ. J. ("Aff. Lisa Beens"),
Ex. B, Mortgage ¶ 3, ECF No. 27-2.  The note states that
Henning's initial bi-weekly payments "may not be sufficient to
pay the entire amount of interest accruing on the unpaid
[p]rincipal balance."  Aff. Lisa Beens Supp. Mot. Summ. J., Ex.
A, Adjustable Rate Mort. Note ¶ 3(B), ECF No. 27-1.  The note
also states that when bi-weekly payments are insufficient to
cover accrued interest, unpaid interest will be rolled into the
principal to itself accrue interest.  Id. ¶ 3(E).

    These same express terms were present in Davis, 806 F.
Supp. 2d at 173-74, and compelled the conclusion in that case,
as they do here, that World never agreed to apply payments to
principal until after interest and deferred interest obligations
were satisfied.  See id.  Indeed, the central issue Henning
takes with the POA loan is that by its own terms it effectively
ensures the mortgagor never actually reaches the principal and
instead continually pays ever-increasing interest.  See Third
Compl. ¶¶ 17-30.  While extremely distasteful, this does not
constitute a promise to apply payments to principal.  Because

PA000018

World never promised to apply payments to principal in the
manner asserted by Henning, it cannot have breached the mortgage
contract by failing to do so.  See Davis, F. Supp. 2d at 173;
Shaterian v. Wells Fargo Bank, N.A., 829 F. Supp. 2d 873, 883
(N.D. Cal. 2011) (dismissing plaintiff-borrower's breach of
contract claim alleging failure to apply payments to POA-
mortgage principal because defendant-lender never expressly
promised to do so); Jones-Boyle v. Washington Mutual Bank, FA,
No. CV 08-02142 JF (PVT), 2010 WL 2724287, at *12 (N.D. Cal.
July 8, 2010) (same).  While not expressly preempted by HOLA,
Henning's breach of contract claim is subverted by the express
terms of the mortgage and note, and is accordingly dismissed.
See Clorox Co. P.R., 228 F.3d at 32 (citing Northern Ind. Gun &
Outdoor Shows, Inc., 163 F.3d at 454).

### 3.    Count III: Breach of Implied Covenant of Good Faith and Fair Dealing

Henning bases his claim for breach of the implied covenant
on World's "piggy-back[ing]" an additional line-of-credit on his
2006 mortgage, using up all of the remaining equity in his
property.  Pl.'s Mem. Opp'n 6.  According to Henning, this fact
increased the likelihood of default and decreased his
eligibility for refinancing.  Id.  Because Henning's claim would
effectively impose regulations on a lender, its effect on

19

PA000019

lending is more than incidental, it is inconsistent with the
policy underlying section 560.2(a), and it is preempted by HOLA.

The implied covenant is present in every contract made in
Massachusetts and requires that no party to a contract undertake
actions which would prejudice the others in their enjoyment of
the fruits of the agreement. Anthony's Pier Four, Inc. v. HBC
Assoc., 411 Mass. 451, 471-72 (1991) (quoting Druker v. Roland
Wm. Jutras Assoc., Inc., 370 Mass. 383, 385 (1976)). Because it
is a state law of general applicability, an implied covenant
claim is not preempted by section 560.2(a). Such a claim may,
however, "be preempted if the [lender's] alleged misconduct fits
into one of the categories identified in [section 560.2] (b),"
or, if the effect on lenders is "more than incidental" as per
section 560.2(c). See Dixon, 798 F. Supp. 2d at 357; see also
Lopez v. Wachovia Mortg., No. 2:09-cv-01510, 2009 WL 4505919, at
*5 (E.D. Cal. Nov. 20, 2009) (dismissing implied covenant claim,
among other state law claims, because they were "based upon
allegations pertaining to the [defendant-lender's] lending
operations," and were thus preempted by HOLA).

Section 560.2(b) provides that HOLA preempts state law
seeking to impose requirements regarding "[p]rocessing,
origination, servicing, sale or purchase of, or investment or
participation in, mortgages." 12 C.F.R. § 560.2(b)(10). With
his implied covenant claim, Henning essentially seeks to

20

regulate whether a lender may offer additional loan products to

a borrower after consummating a first mortgage. See Pl.'s Mem.

Opp'n 6.  A favorable ruling would have a greater than

incidental effect on lenders regarding what may be offered to

potentially over-leveraged borrowers and when. See 12 C.F.R. §

560.2(c); Remo v. Wachovia Mortg., No. C11-02935 TEH, 2011 WL

3448234, at *5 (N.D. Cal. Aug. 5, 2011) (holding preempted state

claims, including implied covenant claim, predicated on "the

very fact that [defendant-lender] entered the loan with

[plaintiff-borrower], and the circumstances under which

[plaintiff-borrower] did enter the loan"); cf. Haehl v.

Washington Mut. Bank, F.A., 277 F. Supp. 2d 933, 942-43 (S.D.

Ind. 2003) (holding state claims preempted under section

560.2(b) because a ruling favorable to the plaintiff would have

the effect of imposing requirements on defendant-lender); Munoz

v. Fin. Freedom Senior Funding Corp., 573 F. Supp. 2d 1275, 1281

(C.D. Cal. 2008) (same). Because of its greater than incidental

effect on lenders in an area the OTS governed, Henning's claim

is also inconsistent with the policy of uniformity and field

preemption under section 560.2(a). Thus, Henning has not

rebutted the presumption of preemption under HOLA.

While not expressly preempted, Henning fails to rebut the

presumption of preemption with respect to his implied covenant

claim, which is accordingly dismissed.

PA000021

### 4.    Count I: Unjust Enrichment

"The doctrine of unjust enrichment exists in the hazy realm of quasi-contract and restitution." Brown v. United Airlines, Inc., 720 F.3d 60, 70 (1st Cir. 2013); see also, e.g., Metro Life Ins. Co. v. Cotter, 464 Mass. 623, 643 (2013); Salamon v. Terra, 394 Mass. 857, 859 (1985); Restatement (Third) of Restitution & Unjust Enrichment § 1 (2011).  To support his unjust enrichment claim, Henning alleges that Wells Fargo's deceptive advertising, its potential knowledge that Henning would likely default when it approved him, and its lack of disclosure of the consequences regarding negative amortization of POA loans were wrongful acts resulting in Wells Fargo's enrichment.  See Third Compl. ¶¶ 54, 17-19, 29, 10.  Henning has also alleged that World improperly determined his DTI ratio by failing to verify Henning's financial information.  Id. ¶¶ 4-6.  Because allowing Henning's unjust enrichment claim would affect lending operations under section 560.2(c) more than incidentally, the Court determines that Henning's unjust enrichment claim is preempted by HOLA.

The first step in the HOLA preemption analysis is to determine whether a state-law claim is expressly preempted by section 560.2(b), and if it is, the analysis ends there.  61 Fed. Reg. 50,951, 50,966.

22

In <u>Dixon</u>, this Court considered whether HOLA preempted a
state law claim for promissory estoppel. In that case, the
plaintiff-borrower alleged that the defendant-lender promised
that if plaintiff defaulted and provided certain financial
information, the defendant would consider a loan modification in
the plaintiff's behalf. <u>Dixon</u>, 798 F. Supp. 2d at 339.  The
defendant, however, never considered the plaintiff for such
modification before beginning foreclosure proceedings.  <u>Id.</u>

The Court concluded that the claim was not expressly
preempted by section 560.2(b) because it "s[ought] not to attack
Wells Fargo's underlying loan servicing policies and practices,
but rather to hold the lender to its word, on which the Dixons
relied to their detriment." <u>Id.</u> at 357.  The claim "relate[d]
to" federal lending regulation, but did not "purport[] to impose
requirements" on the lender other than "to hold the lender to
its word." <u>See</u> <u>id.</u> at 357 (quoting 12 C.F.R. § 560.2(b))
(alteration in original).

The Court explained that because HOLA does not give rise to
a private right of action, <u>id.</u> at 360, Congress could not have
intended to preempt all state claims against lenders, but only
those brought as a "clandestine way of imposing requirements on
lenders." <u>Id.</u> at 356; <u>see</u> <u>Sturgis</u>, 863 F. Supp. 2d at 95
(citing <u>Bopp</u> v. <u>Wells Fargo Bank, N.A.</u>, 740 F. Supp. 2d 12, 17
(D.D.C. 2010)) ("claims are preempted . . . to the extent that

23

such claims attempt to directly enforce substantive lending regulations that would be preempted if the state were to recreate such regulations as statutes."). The Court in Dixon posed the relevant question as "one of function, not theory: will enforcement of the cause of action interfere with or contravene lending . . . ?" 798 F. Supp. 2d at 356; see id. (quoting McAnaney, 665 F. Supp. 2d at 164 n.36) ("If states could not provide protection to consumers through traditional state-law causes of action with only incidental effect on lending, then federal savings associations effectively could 'use preemption as a shield to avoid adherence' to the commitments they make to their customers."). State claims which covertly seek to impose regulations on lenders must be distinguished from those which enforce duties applicable to all business entities. Cuevas v. Atlas Realty/Fin. Servs., Inc., No. C 07-02814 JF, 2008 WL 268981, at *3 (N.D. Cal. Jan. 30, 2008) (allowing claims to proceed past a motion to dismiss where predicated upon failure to "truthfully memorializ[e] in writing what is agreed to orally" as these are duties germane to all businesses, not unique to lenders). Because the promissory estoppel claim sought only to hold the lender to its word, it had no more than an incidental effect on lending, meaning it escaped preemption under section 560.2(c). Dixon, 798 F. Supp. 2d at 358. Similar to the promissory estoppel claim in Dixon,

24

unjust enrichment in the abstract does not seek to impose regulations on lenders, and thus is not preempted under section 560.2(b).

The next step requires an analysis whether Henning's claim affects lending only incidentally, or if it is "otherwise consistent with the purposes of [section 560.2(a)]." 12 C.F.R. § 560.2(c).

Undergirding Henning's claim are allegations of conscious failure to disclose regarding negative amortization, shifting interest rates, deceptive use of impenetrable language in loan documentation, deceptive advertising, and failure to verify financial information.[8]  See Third Compl. ¶¶ 17-19, 29, 10, 13. This claim does not seek to enforce duties germane to all businesses, but rather to impose requirements under the guise of state law. See Dixon, 798 F. Supp. 2d at 356. Henning does not seek to "hold the lender to its word," id. at 357, or to enforce a contract term, Sturgis, 863 F. Supp. 2d at 94, but rather

---

[8] Henning urges that "in substance, all of [his] claims are based on misrepresentations by [World]. Pl.'s Mem. Opp'n 15. The complaint, however, is bereft of reference to any affirmative misrepresentations by World. See Third Compl. Also, to the extent his unjust enrichment claim is based on TILA or RESPA violations, these are essentially further disclosure requirements governed by federal law. Silvas v. E*Trade Mortg. Corp., 421 F. Supp. 2d 1315, 1319 (S.D. Cal. 2006), aff'd 514 F.3d 1001 (9th Cir. 2008) (holding consumer protection violations based on TILA violations preempted under section 560.2(b) because a favorable ruling would have provided state remedies for violations of a federally preempted area of the law).

PA000025

challenges a lender's disclosure and advertising policy, a power reserved to the federal government. 12 C.F.R. § 560.2 (b)(9).

Section 560.2 (b)(9) explicitly preempts matters of "[d]isclosure and advertising," which appear to constitute the bulk of Henning's allegations. See Silvas v. E*Trade Mortg. Corp., 514 F.3d 1001, 1006 (9th Cir. 2008) ("Because this claim is entirely based on E*TRADE's disclosures and advertising, it falls within the specific type of law listed in § 560.2(b)."). Issues involving "terms of credit, including amortization . . . and adjustments to the interest rate," such as those raised by Henning regarding indexing and Wells Fargo's ability to shift the rate, are also expressly preempted. 12 C.F.R. § 560.2(b)(4). Henning challenges World's loan structure, origination, and determination of eligibility, all of which are reserved for OTS. Id. § 560.2(b)(10). While Henning has cast his claim as a state-law cause of action which is not expressly preempted under section 560.2(b), its substance bears on subjects meant for federal regulation under the same regulation.

To say, for example, that the amount of information disclosed by World in this case was insufficient such that retention of any payments received is unjust would effectively be to "impose [disclosure] requirements" on a federal lender by, at minimum, delineating the impermissible level. Cf. Haehl, 277 F. Supp. 2d, at 942-43 (holding state claims, including unjust

enrichment, regarding improperly charged fees preempted because imposing liability effectively would impose requirements regarding loan-related fees). Because the factual allegations undergirding Henning's unjust enrichment claim involve subjects wholly reserved for the federal government, see 12 C.F.R. § 560.2(b), Henning's claim more than "incidentally affect[s] the lending operations," id. § 560.2(c).

Henning's unjust enrichment claim is not "otherwise consistent with the purposes of [section 560.2(a)]." Id. The OTS has expressed concern that inconsistent and conflicting requirements imposed on federal lenders by the application of differing state laws affecting lending runs counter to Congress's intention that such requirements be uniform. 61 Fed. Reg. at 50,965. This was the original purpose behind HOLA's enactment. de la Cuesta, 458 U.S. at 159-60; cf. Fultz v. World Sav. and Loan Ass'n, 571 F. Supp. 2d 1195, 1198 (W.D. Wash. 2008) ("Permitting state common law and statutory causes of action to proceed without regard to, and unlimited by, the existing federal scheme of regulations would undermine the purposes set forth in § 560.2(a)."). Because of the potential for conflict and inconsistency in lending regulation, Henning's unjust enrichment claim is not consistent with the purposes of section 560.2(a).

Count I, Henning's unjust enrichment claim, is therefore dismissed as preempted by HOLA.

### 5.    Count II: Equitable Relief

Henning claims equitable relief including "rescission or reformation of his loan note and modification," and an injunction removing the loan from his credit history as well as stopping foreclosure on his home.  Third Compl. ¶ 58. "[A]llegations [that] actually describe the remedies sought by plaintiff . . . do not constitute actionable claims."  Linton v. N.Y. Life Ins. & Annuity Corp., 392 F. Supp. 2d 39, 41 (D. Mass. 2005) (Zobel, J.) (internal quotation marks omitted); Accord Baldwin v. Duke Energy Corp., No. 3:12CV212-MOC-DSC, 2012 WL 3564021, at *4 (W.D.N.C. July 13, 2012) report and recommendation adopted, 3:12CV212, 2012 WL 3562402 (W.D.N.C. Aug. 17, 2012) (dismissing equitable relief "claim" because it was not an independent cause of action).  Thus, HOLA preemption is a non-issue as Henning has not put forth any "law" in Count II to preempt.  Count II is dismissed as Henning has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).

### 6.    Count VI: Negligence Based on Federal Statutory Duties

Henning alleges that World violated RESPA and TILA through Regulation Z by failing to provide him with certain disclosure

PA000028

documents relevant to his loans.   Third Compl. ¶¶ 9, 69-70.
These violations, Henning asserts, constitute negligence under
Massachusetts law, with the requisite duty established by
federal statute.   See id. ¶ 69-70.   This claim is dismissed as
preempted by HOLA.

Again, tort law is not expressly preempted under section
560.2(a) because it does not specifically attempt to impose
requirements on lenders, but is of general applicability.   See
12 C.F.R. § 560.2(a).   It is exempted from HOLA preemption under
section 560.2(c) if it only incidentally affects lending
operations, or is "otherwise consistent with the purposes of
[section 560.2(a)]."   Id.

Courts diverge in their treatment of state law actions
based on TILA or RESPA violations.   Specific to negligence
claims, many bypass the question of preemption, but dismiss the
claim because TILA and RESPA, in and of themselves, do not
establish a cognizable duty owed by lender to borrower.   See,
e.g., Broderick v. PNC Mortg. Corp., No. 11-10047-JLT, 2013 WL
1187111, at *3 n.63 (D. Mass. Mar. 20, 2013) (Tauro, J.);
Thornes v. IMB Lender Bus. Process Servs., Inc., No. C10-
1716MJP, 2011 WL 677428, at *3 (W.D. Wash. Feb. 15, 2011); Levy
v. JP Morgan Chase, No. 10CV1493 DMS (BLM), 2010 WL 4641033, at
*2 (S.D. Cal. Nov. 5, 2010); Yanik v. Countrywide Home Loans,
Inc., No. CV 10-6268 CAS (RZx), 2010 WL 4256312, at *6 (C.D.

29

PA000029

Cal. Oct. 18, 2010).  District courts within the Ninth Circuit typically find state law claims predicated on TILA and RESPA violations to be preempted by HOLA, particularly where the plaintiff has apparently recast his or her claim as one of state law to avoid the time bar under those statutes.  See, e.g., Gallegos v. Wells Fargo Bank, N.A., No. 1:13-CV-608 AWI MJS, 2013 WL3166389, at *5 (E.D. Cal. June 20, 2013); Falcocchia v. Saxon Mortg., Inc., 709 F. Supp. 2d 873, 886 (E.D. Cal. 2010); Newbeck v. Washington Mut. Bank, No. C 09-1599 CW, 2010 WL 291821, at *4 (N.D. Cal. Jan. 19, 2010); Reyes, 541 F. Supp. 2d at 1115.

The Ninth Circuit and its lower district courts have considered primarily consumer protection claims predicated on TILA or RESPA violations.  Courts in that circuit have reasoned that such claims predicated on federal law are preempted by HOLA where allowing the claim would supplement the remedies available under the federal law by, for example, effectively extending the statute of limitations.  Reyes, 541 F. Supp. 2d at 1115 (citing Public Util. Dist. No. 1 of Grays Harbor Cty. Wash. v. IDACOR, Inc., 379 F.3d 641, 648-49 (9th Cir. 2004)); see also, Silvas, 541 F.3d at 1004 ("Appellants were too late to sue under TILA. Their end run [bringing a state claim based on TILA violations] will not do.").

PA000030

This Court finds the Ninth Circuit's approach to state law claims predicated on TILA and RESPA violations persuasive.[9]  TILA and RESPA are federal statutes regulating disclosure requirements and procedures which directly affect lenders and already have their own enforcement mechanisms.  12 U.S.C. § 2605 (RESPA); 15 U.S.C. §§ 1639, 1640(a) (TILA).  Each has its own limitations period of either one or three years, depending on the implicated section, in which an aggrieved borrower can bring an action based on a lender's violation.  12 U.S.C. § 2614 (RESPA); 15 U.S.C. 1640(e) (TILA).  Other sessions of this court have construed these limitations periods strictly.  See Sturgis, 863 F. Supp. 2d at 93-94.

Common-law negligence has its own statute of limitations unique to Massachusetts, which could potentially extend the time in which TILA or RESPA based claims could be brought.[10]  See Mass. Gen. Laws. ch. 260, § 2A (allowing three years in which to bring a tort action after accrual).  Further, Henning's claim is essentially predicated on federal disclosure requirements.  See

_____

[9] While this Court does not employ the same "as applied" approach to HOLA preemption that the Ninth Circuit uses, see Silvas, 514 F.3d at 1006, the mode of "functional analysis" laid out in Dixon is nonetheless consistent with the Ninth Circuit. 798 F. Supp. 2d at 356.

[10] Though the Court need not reach the issue, there is some suggestion that Henning's claims would be time-barred under RESPA and TILA. Def.'s Mem. Supp. 8.

PA000031

Third Compl. ¶ 9. Allowing a negligence claim such as this could potentially expand or change the regulatory scheme imposed on federal lenders in an area over which the OTS has occupied the field.[11] See 12 C.F.R. § 560.2(a), (b); cf. Reyes, 541 F. Supp. 2d at 1115 (holding consumer protection claim based on TILA violation preempted by HOLA because it would have extended the TILA statute of limitations from one to four years). Thus, Henning's negligence claim more than "incidentally affects . . . lending operations." 12 C.F.R. § 560.2(c). For this reason, it is also inconsistent with the policy of field preemption undergirding section 560.2(a).

Henning's negligence claim based on federal statutory duties is accordingly dismissed as preempted by HOLA and its implementing regulations.

### 7.   Count V: Negligence Based on Massachusetts Statutory Duties

Henning claims that Wells Fargo and its agents have violated Massachusetts statutory duties and are thus negligent. Third Compl. ¶¶ 66-68. This claim fails because to allow a negligence cause of action based on Henning's allegations would more than incidentally affect lending, and Count V is accordingly dismissed as preempted.

---

[11] As an aside, this Court is generally skeptical of imposing negligence duties based on statutes except under circumstances not present here. See Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181, 195-196 (D. Mass 2006).

PA000032

Tort law is state based and generally applicable, meaning that section 560.2(b) does not expressly preempt Henning's negligence claim.  See 12 C.F.R. § 560.2(b).  Indeed, tort is listed in section 560.2(c) as an area of law specifically exempted from HOLA preemption.  Id. § 560.2(c)(4).  The question of preemption, then, turns on whether Henning's negligence claim has an incidental effect on lending or if it is "otherwise consistent with the purposes of [section 560.2(a)]."  Id. § 560.2(c).

To establish negligence, a plaintiff must show that the defendant owed him or her a legal duty.  Jorgenson v. Mass. Port Auth., 905 F.2d 515, 522 (1st Cir. 1990).  To show such a duty here, Henning cites in his complaint various Massachusetts statutes and regulations dealing with lending practices.  Third Compl. ¶¶ 68, 11.

Henning broadly alleges that Wells Fargo has violated a duty established by the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D, §§ 1-35, which regulates credit disclosures as its name suggests.  Henning also cites Code of Massachusetts Regulations, title 940, section 8.05(2), which purports to regulate the disclosure practices of lenders, making it unfair and deceptive for a lender to fail to disclose facts which might influence a borrower's decision.  Id.  Henning further attempts to establish

33

PA000033

duty based on Code of Massachusetts Regulations, title 940,
section 8.06(1), which essentially mandates truthful disclosures
by lenders and brokers, and Code of Massachusetts Regulations,
title 940, section 8.06(17), which makes unfair and deceptive
the issuance of a loan which is "not in the borrower's interest"
because the lender has an undisclosed conflict of interest with
the borrower.  940 Mass. Code Regs. § 8.06(17).

While mindful of citizens' rights under their own state's
laws, "courts must be wary of artfully pleaded attempts to use
common-law claims as a clandestine way of imposing requirements
on lenders that states otherwise could not enact through
legislation or regulation."  Dixon, 798 F. Supp. 2d at 356
(citing McAnaney, 665 F. Supp. 2d at 169 n.39).  To allow
Henning's negligence claim to proceed based on the Massachusetts
statute and regulations supra would be to potentially usurp
federal regulatory authority under HOLA through the backdoor of
state common law.  See Jones v. Home Loan Inv., F.S.B., 718 F.
Supp. 2d 728, 736-37 (S.D. W. Va. 2010) (holding preempted by
HOLA, because the claim was "impermissibly regulatory in
nature", a negligence claim against defendant-lender based on
the plaintiff-borrower's alleged unsuitability for the loan she
was given).  Indeed, several sessions of this court have decided
that the MCCCDA is definitively preempted by HOLA because it
runs afoul of section 560.2(b).  Sturgis, 863 F. Supp. 2d at 92-

PA000034

93; see Currie, 2013 WL 3379539, at *5. Henning could not
escape HOLA preemption were he to directly challenge Wells
Fargo's actions under the MCCCDA, see Sturgis, 863 F. Supp. 2d.
at 93, and he is not able to do so by transforming his claim
into a tort action.

The same result attaches with respect to the Massachusetts
regulations with which Henning seeks to establish duty. All
essentially purport to impose disclosure requirements on lenders
by defining unfair or deceptive practices under chapter 93A.
See infra Part II.B.8; United Cos. Lending Corp. v. Sargeant, 20
F. Supp. 2d 192, 204 (D. Mass. 1998). HOLA explicitly preempts
state law which purports to regulate disclosure requirements.
12 C.F.R. § 560.2(b)(9). As with the MCCCDA, Henning cannot
directly challenge Wells Fargo's practices under the
regulations, and cannot do so by casting his claim as a tort.
Even were this not the case, this Court has expressed hesitance
to find a negligence duty based on chapter 93A as it is not a
penal or safety statute and provides its own enforcement
mechanism. Islam v. Option One Mortg. Corp., 432 F. Supp. 2d
181, 196 (D. Mass. 2006).

Henning's negligence claim would have a greater than
incidental effect on lenders because he attempts to impose
requirements under the guise of state common law. See Jones,
718 F. Supp. 2d at 736-37. For this reason, it is also

35

PA000035

inconsistent with the purposes of section 560.2(a), which encourages uniformity of lending regulation through federal field preemption.  Allowing states essentially to regulate disclosure requirements using tort law does not serve this end. Thus Count V, Henning's negligence claim based on Massachusetts statutory duties, is dismissed as preempted by HOLA and its implementing regulations.

8.    **Count IV: Violation of Massachusetts General Laws chapter 93A**

While not expressly preempted under section 560.2(b), Henning's chapter 93A claim affects lending, and fails to rebut the presumption of preemption under section 560.2(c) as its effect is more than incidental.  Insofar as it is based on predatory lending as a deceptive practice, Pl.'s Mem. Opp'n 7, Henning's chapter 93A claim is preempted and therefore dismissed.[12]

---

[12] Henning also alleges that World violated chapter 93A by "fail[ing] to make a reasonable settlement offer in response" to Henning's written demand.  Third Compl. ¶ 65.  Henning's claim is dismissed insofar as it is based on this assertion because the response to a potential plaintiff's written demand is permissive under the statute.  Mass. Gen. Laws ch. 93A § 9(3) ("Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner.").

PA000036

Under Massachusetts consumer protection law, "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful. Mass. Gen. Laws ch. 93A, § 2(a). A victorious plaintiff is entitled to reasonable attorney's fees under chapter 93A, and may receive treble damages if the defendant's violation was willful or knowing. Id. § 9(3), (4). An aggrieved consumer must send a demand letter to a potential defendant at least thirty days prior to filing a complaint "identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered." Id. § 9(3).

A session of this court has stated that "[s]tate laws prohibiting deceptive acts and practices in the course of commerce are not included in the illustrative list of preempted laws in § 560.2(b)." Sturgis, 863 F. Supp. 2d at 97 (alteration in original) (quoting Carolyn J. Buck, Office of Thrift Supervision, Preemption of State Laws Applicable to Credit Card Transactions, P-96-14 (Dec. 24, 1996), available at 1996 WL 767462) (internal quotation marks omitted). The First Circuit has also noted that chapter 93A claims are not preempted by HOLA where the purported violation was based on breach of contract. Yeomalakis v. FDIC, 562 F.3d 56, 61 (1st Cir. 2009). Because chapter 93A regulates the conduct of businesses generally, rather than lenders specifically, it is not preempted under

37

section 560.2(b). See Sturgis, 863 F. Supp. 2d at 97; see also Dixon, 798 F. Supp. 2d at 356-57.

Henning's chapter 93A claim, however, appears to be based primarily on World's predatory lending practices, Pl.'s Mem. Opp'n 7, meaning it affects lending, thus giving rise to a rebuttable presumption of preemption under section 560.2(c). Dixon, 798 F. Supp. 2d at 354 (citing 61 Fed. Reg. at 50,966). Claims under chapter 93A fall within the purview of section 560.2(c)(1), as forms of contract and commercial law. Sturgis, 863 F. Supp. 2d at 97. The presumption of preemption is not rebutted, however, because Henning's claim would more than incidentally affect lending operations.

As to state consumer protection laws, a court must consider "the relationship between federal and state laws as they are interpreted and applied, not merely as they are written." Id. at 97 (quoting Carolyn J. Buck, Office of Thrift Supervision, California Unfair Competition Act, P-99-3 (Mar. 10, 1999), available at 1999 WL 413698) (internal quotation marks omitted). Where the substance of a chapter 93A claim would tend to impose specific requirements on a lender, it is preempted, even if the statute itself is not wholly subject to HOLA preemption under section 560.2(b). See id.; Currie, 2013 WL 3379539, at *5.

Henning argues that World's lending activity was predatory based on its similarity to the lending in Commonwealth v.

38

PA000038

Fremont Inv. & Loan, 452 Mass. 733, 736-41 (2008), which was
deemed unfair and deceptive and a likely violation of chapter
93A.  Id. at 743-44.  These similar characteristics included
loans featuring a low introductory rate which ballooned shortly
after consummation, high DTI ratios, a loan-to-value ratio of
one hundred percent, and other characteristics making it likely
that the borrower would default.  Id. at 739.  While Henning
makes a good showing that World's activity was unfair and
deceptive on the merits by comparison to Fremont, he fails to
account for the fact that preemption was not an issue in that
case: the lender was "an industrial bank chartered by the State
of California" and not governed by HOLA.  See id. at 736.

Even if World's lending was a chapter 93A violation under
Massachusetts law, courts must be wary of attempts to use state
law claims to impose regulations on federal lending institutions
when such regulations would be preempted had the state done so
through legislation.  Dixon, 798 F. Supp. 2d at 356 (citing
McAnaney, 665 F. Supp. 2d at 169 n.39).  If this Court offered
Henning redress under chapter 93A it would effectively be
regulating loan-to-value and DTI ratios, and the permissibility
of adjustable rate mortgage loans.  These are subject to federal
authority, meaning that Henning's chapter 93A claim is
preempted, as would state predatory lending laws be preempted by
HOLA prior to Dodd-Frank if they imposed regulations on federal

39

lenders regarding the same or similar subjects. See Carolyn J. Buck, Office of Thrift Supervision, Preemption of New York Predatory Lending Law 1-2, P-2003-2 (Jan. 30, 2003), available at 2003 WL 24040101 (indicating that a New York predatory lending law purporting to impose requirements on a federal lender regarding terms of credit, origination, fees, disclosures, and servicing of mortgage loans was preempted by HOLA). Henning's claim would not have only an "incidental" effect on federal lending institutions. 12 C.F.R. § 560.2(c); see, e.g., Fultz, 571 F. Supp. 2d at 1198 (holding preempted claims which sought to impose requirements on a lender reserved for the federal government under the guise of state consumer protection law); cf. Leet v. Cellco P'ship, 480 F. Supp. 2d 422, 434 (D. Mass. 2007) (Saylor, J.) (holding chapter 93A claim preempted because the alleged facts undergirding the claim "directly relate[d] to the subject matter" of the Fair Credit Reporting Act). Because of its more than incidental effect on lending and the potential for variable and conflicting lending regulation, Henning's chapter 93A claim is also inconsistent with the purposes of section 560.2(a). See Fultz, 571 F. Supp. 2d at 1198.

While chapter 93A is a state law of general applicability not dealing specifically with lending activity, the substance of Henning's chapter 93A claim would have greater than an

40

PA000040

incidental effect on federal lenders.  Courts must not allow litigants to regulate federal lenders under the guise of state law claims.  See Dixon, 798 F. Supp. 2d at 356.  Thus, Henning's chapter 93A claim is preempted by HOLA and is accordingly dismissed.

## III. CONCLUSION

And so, Wells Fargo wins on a technicality.  The Court never addresses the merits of this case and expresses no opinion thereon.  Still, it is appropriate to point out that, were Henning to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous.  On the other hand, perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors.  A quick visit to Wells Fargo's website confirms that it vigorously promotes itself as consumer friendly, Loans and Programs, page within Home Lending, wellsfargo.com, https://www.wellsfargo.com/mortgage/loan-programs/ (last visited September 17, 2013); a far cry from the hard-nosed win-at-any-cost stance it has adopted here.

The technical (and now obsolete) preemption defense upon which Wells Fargo relies is an affirmative defense which can be waived.  See, e.g., Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000).  The disconnect between Wells Fargo's publicly advertised face and its actual

41

PA000041

litigation conduct here could not be more extreme.  These facts lead this Court to inquire whether Wells Fargo wishes to address Henning's claims on the merits.  After all, it may be that Wells Fargo has done nothing wrong.

**ACCORDINGLY**, it is **ORDERED** that Wells Fargo, within 30 days of the date of this order, shall submit a corporate resolution bearing the signature of its president and a majority of its board of directors that it stands behind the conduct of its skilled attorneys and wishes to avail itself of the technical preemption defense to defeat Henning's claim.

Should it do so, judgment will enter for Wells Fargo. If no such resolution is filed, the Court will deem the preemption defense waived and both Wells Fargo and Henning will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury.


**SO ORDERED**


/s/ William G. Young
William G. Young,
District Judge

PA000042



Log out | Manage Your Account | Subscribe



www.masslawyersweekly.com

Search our archives [go]

*Enter keyword or Lawyers Weekly case number*



- ○ Home
- ○ NEWS»
- ○ Judges/Courts»
- ○ Opinions»
- ○ Verdicts & Settlements»
- ○ Public Records»
- ○ Advertising»
- ○ Events»
- ○ Classifieds»
- ○ Publications»

## Judge dares bank to waive preemption defense

Published: 1:50 pm Thu, September 19, 2013
By Tom Egan



A federal judge has challenged Wells Fargo Mortgage, N.A., to dec
federal preemption defense to a complaint filed by a plaintiff borrower.

PA000043

U.S. District Court Judge William G. Young did find plaintiff Joseph Henning's claims to be preempted

"And so, Wells Fargo wins on a technicality," the judge commented. "Still, it is appropriate to point out merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous."

Young noted that on its website Wells Fargo vigorously promotes itself as consumer-friendly, "a far cry has adopted here."

The judge found that the "disconnect between Wells Fargo's publicly advertised face and its actual litig

That disconnect led him to inquire whether Wells Fargo would prefer to address the plaintiff's claims or

"After all, it may be that Wells Fargo has done nothing wrong," Young acknowledged.

The judge therefore ordered Wells Fargo within 30 days submit a corporate resolution bearing the signa directors that it "stands behind the conduct of its skilled attorneys" and wishes to avail itself of the techi claim.

If no such resolution is filed, "the Court will deem the preemption defense waived and both Wells Farg address the merits (i.e., what really happened) at a trial before an American jury," Young concluded.

The 37-page decision is Henning v. Wachovia Mortgage, FSB, Lawyers Weekly No. 02-499-13.

Click here to read the full text of the opinion.



Powered by Bookmarkify™

×

Tags: Home Owners' Loan Act, Sept. 30 2013 issue, Wells Fargo

This entry was published on Thursday, September 19th, 2013 at 1:50 pm and is filed under Business/Corporate, News Briefs, to this entry through the RSS 2.0 feed. You can skip to the end and leave a response. Pinging is currently not allowed.



× 

« Previous Post
Next Post »





**One Response to "Judge dares bank to waive preemption defense"**

1.  *jkeramaris@gmail.com* Says:
   September 20th, 2013 at 12:11 pm

   Judge Young visited Suffolk Law when I was a student there. He told one of my friends on Moot Suffolk for a clerkship. That pretty much sums the guy up.

   What did he expect Wells Fargo to do in this case? Just take the mat? Is that reasonable or fair?

**Leave a Reply**

Name (required)

E-Mail (will not be published) (required)

Website

Privacy & Terms

Submit Comment

☐ Notify me of follow-up comments by email.

☐ Notify me of new posts by email.

**Bizar, David**

**Subject:**                FW: Judge dares bank to waive preemption defense

**From:** Massachusetts Lawyers Weekly <noah.schaffer@lawyersweekly.com>
**Date:** September 20, 2013, 8:49:37 AM PDT
**To:** "crobertson@seyfarth.com" <crobertson@seyfarth.com>
**Subject: Judge dares bank to waive preemption defense**
**Reply-To:** Massachusetts Lawyers Weekly <noah.schaffer@lawyersweekly.com>

## MASSACHUSETTS LAWYERS WEEKLY
### Daily Alert

September 20, 2013

Subscribe | Advertise

If you are having trouble viewing this page with images, click here. Add noah.schaffer@lawyersweekly.com to your address book to ensure our emails reach your inbox.

### LEGAL NEWS

**Judge dares bank to waive preemption defense**
A federal judge has challenged Wells Fargo Mortgage, N.A., to decide whether it wishes to waive its right to raise a federal preemption defense to a complaint filed by a plaintiff borrower. Click here to read the full Lawyers Weekly story.

**Mother's murder conviction upheld** - The Appeals Court has affirmed the second-degree murder conviction of Carolyn Riley, whose 4-year-old daughter died from an overdose of clonidine and other medications. Click here to read the full Lawyers Weekly story.

**A cry for help** - In a letter to U.S. Sen. Elizabeth A. Warren, Chief Judge Patti B. Saris of the U.S. District Court in Massachusetts continues to sound the alarm – and turns up its volume -- about the troubling consequences sequester budget cuts are having on the judiciary. Click here to read the full Lawyers Weekly story.

**Confession suppressed over police tactics** - A first-degree murder defendant's statements made during an interview with police must be excluded from trial because the 19-year-old defendant's will was overborne by improper police interrogation tactics, the Appeals Court has ruled. Click here to read the full Lawyers Weekly story.

### JOB OF THE DAY

**ATTORNEY**

### TOP OPINIONS

Employment – Disability – Barista (U.S. District Court)

Insurance – Settlement – Email (U.S. District Court)

Consumer protection -- Unsolicited advertising -- Fax (U.S. District Court)



New poll question: Leaf blower arrest
Click here to take the Lawyers Weekly poll. This week's poll question: Should Brookline police have arrested a man who allegedly violated local leaf blower laws and then refused to identify himself to an officer?

### FEATURED BOOK



**The FIRPTA Withholding Guidebook** If you ever handle real estate transactions involving a foreign buyer or investor, you need this practical guidebook! Click here for more information.

1

Suburban Boston area law firm is seeking a real estate attorney. Three to Five years experience. MA bar required, NH and RI a plus. Demonstrated ability to assess and balance risks, perform research, communicate results verbally and written, including publication. Please forward resume and inquiries to Michelle Greenough at mgreenough@orlansmoran.com

EVENTS

Lawyers for The One Fund

Sept. 20, 6 - 8 p.m., Parker Scheer, One Constitution Center, Boston

Enjoy live jazz, cocktails, fabulous food and conversation as members of the legal and business community come together to assist the victims of the Boston Marathon bombing. Click here for more information.

Remote Access for Law Firms

Sept. 25, 4-6 p.m., John Adams Courthouse, Boston

Find out (in plain English) how to save money, handle security concerns, provide staff and clients with the access they need, and comply with legal and ethical requirements. Click here for more information.

List Unsubscribe- TERMS & CONDITIONS - PRIVACY NOTICE
If you have any questions, comments or suggestions for this newsletter, please send an e-mail to webeditor@lawyersweekly.com.
Copyright © 2013, Massachusetts Lawyers Weekly. All Rights Reserved.
Postal address: Lawyers Weekly 10 Milk Street, 10th Floor Boston, MA 02108

PA000047



press release
Sept 19, 2013, 1:23 p.m. EDT

## Federal Judge Challenges Wells Fargo To Do The Right Thing:



# PR Newswire

A UBM plc company

BOSTON, Sept. 19, 2013 /PRNewswire via COMTEX/ — On 18 September 2013, United States District Court Judge William Young of Massachusetts challenged Wells Fargo to live up to their advertising and marketing as a "consumer friendly" bank by waiving a technical defense that would deny a jury the ability to hear and render a verdict in a case of "outrageous" facts of wrongdoing and fraud in one of its loan program. Judge's words:

Most Po



1.


2. 

Conclusion:And so, Wells Fargo wins on a technicality. The Court never addresses the merits of this case and expresses no opinion thereon. Still, it is appropriate to point out that, were Henning to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous. On the other hand, perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors. A quick visit to Wells Fargo's website confirms that it vigorously promotes itself as consumer friendly, Loans and Programs, page within Home Lending, wellsfargo.com, https://www.wellsfargo.com/mortgage/loan-programs/ (last visited September 17, 2013); a far cry from the hard-nosed win-at-any cost stance it has adopted here. The technical (and now obsolete) preemption defense upon which Wells Fargo relies is an affirmative defense

3.


4.


5. Six stocks

which can be waived. See, e.g., Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000). The disconnect between Wells Fargo's publicly advertised face and its actual litigation conduct here could not be more extreme. These facts lead this Court to inquire whether Wells Fargo wishes to address Henning's claims on the merits. After all, it may be that Wells Fargo has done nothing wrong.ACCORDINGLY, it is ORDERED that Wells Fargo, within 30 days of the date of this order, shall submit a corporate resolution bearing the signature of its president and a majority of its board of directors that it stands behind the conduct of its skilled attorneys and wishes to avail itself of the technical preemption defense to defeat Henning's claim. Should it do so, judgment will enter for Wells Fargo. If no such resolution is filed, the Court will deem the preemption defense waived and both Wells Fargo and Henning will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury.

Henning v. Wachovia n/k/a Wells Fargo, U.S.D.C. District of Massachusetts #11-11428-WGY

Mr. Henning's counsel is Diviacchi Law Office.

SOURCE Diviacchi Law Office

Copyright (C) 2013 PR Newswire. All rights reserved





Video »









Partner

## Suggested Stories

Ignore the 'sell-by' dates on your groceries

Buffett says Bernanke should stay at Fed

Why you shouldn't contribute to your 401(k)

Wells Fargo to cut 1,800 mortgage-related jobs

Grand Theft Auto V(R) Retail Sales Exceed $800 Million Worldwide During First...

Institutional Investor Ranks Wells Fargo Securities as #1 In High Grade Research

## Content from our Sponsors

Discover a New Retirement Tool for Pre-Retirees Ages 55-64 (BlackRock)

Amazing: This 17th Century Tool Still Used by Stock Traders! (etrade.com)

The Five Big Lies of Retirement Planning (Charles Schwab)

German 'Wise Man' says Italy, Spain could face downturn as severe as Greece (RBS)

Mayim Bialik leaves tech on 'Big Bang' set (USA TODAY)

Federal Judge Challenges Wells Fargo To Do The Right Thing: - Press Release - Digital J...   Page 1 of 4

**TOP eDiscovery Vendors**
A LAB controduct query visioning
Read this Software Comparison Now! 23 Top Vendors Compared by Gartner.



# DIGITAL JOURNAL

CONTRIBUTE          Like   29K          Connect

| NEWS | TECH | DRIVING | ENTERTAINMENT | LIFE | SPORTS | BIZ | MONEY |

TRENDING NOW   Spain   HIV   Glacier   Synthetic Grass   Rehab   Hong Kong   Violence Against Women

---

**Press Release**                                                  More press releases


Share
Google
exus 7
he world's
ighest resolution
tablet
Buy now   from 1,229

Recommend   0   Send


for investing in
the future you want.
Shop by your local branch for
a personalized retirement review today.
learn more   PNC

## Federal Judge Challenges Wells Fargo To Do The Right Thing:

PR Newswire

BOSTON, Sept. 19, 2013

BOSTON, Sept. 19, 2013 /PRNewswire/ -- On 18 September 2013, United States District Court Judge William Young of Massachusetts challenged Wells Fargo to live up to their advertising and marketing as a "consumer friendly" bank by waiving a technical defense that would deny a jury the ability to hear and render a verdict in a case of "outrageous" facts of wrongdoing and fraud in one of its loan program. Judge's words:

(Logo: http://photos.prnewswire.com/prnh/20130919/NE82976LOGO )

**Conclusion:**

And so, Wells Fargo wins on a technicality. The Court never addresses the merits of this case and expresses no opinion thereon. Still, it is appropriate to point out that, were Henning to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous. On the other hand, perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors. A quick visit to Wells Fargo's website confirms that it vigorously promotes itself as consumer friendly, Loans and Programs, page within Home Lending, wellsfargo.com, https://www.wellsfargo.com/mortgage/loan-programs/ (last visited September 17, 2013); a far cry from the hard-nosed win-at-any cost stance it has adopted here. The technical (and now obsolete) preemption defense upon which Wells Fargo relies is an affirmative defense which can be waived. See, e.g., Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000). The disconnect between Wells Fargo's publicly advertised face and its actual litigation conduct here could not be more extreme. These facts lead this Court to inquire whether Wells Fargo wishes to address Henning's claims on the merits. After all, it may be that Wells Fargo has done nothing wrong.

ACCORDINGLY, it is ORDERED that Wells Fargo, within 30 days of the date of this order, shall submit a corporate resolution bearing the signature of its president and a majority of its board of directors that it stands behind the conduct of its skilled attorneys and wishes to avail itself of the technical preemption defense to defeat Henning's claim. Should it do so, judgment will enter for Wells Fargo. If no such resolution is filed, the Court will deem the preemption defense waived and both Wells Fargo and Henning will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury.

Henning v. Wachovia n/k/a Wells Fargo, U.S.D.C. District of Massachusetts #11-11428-WGY

Mr. Henning's counsel is Diviacchi Law Office.

**TOP NEWS**          **LATEST NEWS**

Op-Ed: Canadian Forces unit that treats wounded tries to stifle critics
Recommend   1

Celebrities who have recently been in rehab secretly
Recommend   1

Pig-manure fertilizer linked to human MRSA infections
Recommend   1

Op-Ed: Barbershop school is making a resurgence, at least in South City SPECIAL
Recommend   1

Op-Ed: UKIP's most embarrassing MEP
Recommend   1

Chinese politician Bo Xilai gets life sentence
Recommend   1

Two fighters each remembered for one punch
Recommend   0

Review: Dara Maclean soars on new studio album 'Wanted' SPECIAL
Recommend   4

Perfect NASA job: $18,000 for doing nothing during 70 days
Recommend   1



# Federal Judge Challenges Wells Fargo To Do The Right Thing:

*Information contained on this page is provided by an independent third-party content provider. WorldNow and this Station make no warranties or representations in connection therewith. If you have any questions or comments about this page please contact pressreleases@worldnow.com.*

SOURCE Diviacchi Law Office

BOSTON, Sept. 19, 2013 /PRNewswire/ -- On 18 September 2013, United States District Court Judge William Young of Massachusetts challenged Wells Fargo to live up to their advertising and marketing as a "consumer friendly" bank by waiving a technical defense that would deny a jury the ability to hear and render a verdict in a case of "outrageous" facts of wrongdoing and fraud in one of its loan program. Judge's words:

(Logo: http://photos.prnewswire.com/prnh/20130919/NE82978LOGO )

**Conclusion:**
And so, Wells Fargo wins on a technicality. The Court never addresses the merits of this case and expresses no opinion thereon. Still, it is appropriate to point out that, were Henning to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous. On the other hand, perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors. A quick visit to Wells Fargo's website confirms that it vigorously promotes itself as consumer friendly, Loans and Programs, page within Home Lending, wellsfargo.com, https://www.wellsfargo.com/mortgage/loan-programs/ (last visited September 17, 2013); a far cry from the hard-nosed win-at-any cost stance it has adopted here. The technical (and now obsolete) preemption defense upon which Wells Fargo relies is an affirmative defense which can be waived. See, e.g., Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000). The disconnect between Wells Fargo's publicly advertised face and its actual litigation conduct here could not be more extreme. These facts lead this Court to inquire whether Wells Fargo wishes to address Henning's claims on the merits. After all, it may be that Wells Fargo has done nothing wrong.
**ACCORDINGLY,** it is ORDERED that Wells Fargo, within 30 days of the date of this order, shall submit a corporate resolution bearing the signature of its president and a majority of its board of directors that it stands behind the conduct of its skilled attorneys and wishes to avail itself of the technical preemption defense to defeat Henning's claim. Should it do so, judgment will enter for Wells Fargo. If no such resolution is filed, the Court will deem the preemption defense waived and both Wells Fargo and Henning will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury.

Henning v. Wachovia n/k/a Wells Fargo, U.S.D.C. District of Massachusetts #11-11428-WGY

Mr. Henning's counsel is Diviacchi Law Office.

©2012 PR Newswire. All Rights Reserved.



Create Account   Log In

Sponsored Links

Credit Company Breach
LifeLock Ultimate™ protects your identity from the effects of data breach.
LifeLock.com

Luxt
OMv
www.

# Federal Judge C
# Do The Right Th

*Information contained on this page is provided by an independent third-party content provider. WorldNow and this Station make no warranties or representations in connection therewith. If you have any questions or comments about this page please contact pressreleases@worldnow.com.*

SOURCE Diviacchi Law Office

BOSTON, Sept. 19, 2013 /PRNewswire/ -- On 18 September 2013, United States District Court Judge William Young of Massachusetts challenged Wells Fargo to live up to their advertising and marketing as a "consumer friendly" bank by waiving a technical defense that would deny a jury the ability to hear and render a verdict in a case of "outrageous" facts of wrongdoing and fraud in one of its loan program. Judge's words:

(Logo: http://photos.prnewswire.com/prnh/20130919/NE82978LOGO )

**Conclusion:**
And so, Wells Fargo wins on a technicality. The Court never addresses the merits of this case and expresses no opinion thereon. Still, it is appropriate to point out that, were Henning to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous. On the other hand, perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors. A quick visit to Wells Fargo's website confirms that it vigorously promotes itself as consumer friendly, Loans and Programs, page within Home Lending, wellsfargo.com, https://www.wellsfargo.com/mortgage/loan-programs/ (last visited September 17, 2013); a far cry from the hard-nosed win-at-any cost stance it has adopted here. The technical (and now obsolete) preemption defense upon which Wells Fargo relies is an affirmative defense which can be waived. See, e.g., Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000). The disconnect between Wells Fargo's publicly advertised face and its actual litigation conduct here could not be more extreme. These facts lead this Court to inquire whether Wells Fargo wishes to address Henning's claims on the merits. After all, it may be that Wells Fargo has done nothing wrong. **ACCORDINGLY**, it is **ORDERED** that Wells Fargo, within 30 days of the date of this order, shall submit a corporate resolution bearing the signature of its president and a majority of its board of directors that it stands behind the conduct of its skilled attorneys and wishes to avail itself of the technical preemption defense to defeat Henning's claim. Should it do so, judgment will enter for Wells Fargo. If no such resolution is filed, the Court will deem the preemption defense waived and both Wells Fargo and Henning will have the opportunity to address the merits (i.e., what really happened) at a trial before an American jury.

Henning v. Wachovia n/k/a Wells Fargo, U.S.D.C. District of Massachusetts #11-11428-WGY

Page 2 of 2

Mr. Henning's counsel is Diviacchi Law Office.

©2012 PR Newswire. All Rights Reserved.

**worldnow**



Privacy Policy





Advertisement

## Federal Judge Challenges Wells Fargo To Do The Right Thing:

*Information contained on this page is provided by an independent third-party content provider. WorldNow and this Station make no warranties or representations in connection therewith. If you have any questions or comments about this page please contact pressreleases@worldnow.com.*

SOURCE Divlacchi Law Office

BOSTON, Sept. 19, 2013 /PRNewswire/ -- On 18 September 2013, United States District Court Judge William Young of Massachusetts challenged Wells Fargo to live up to their advertising and marketing as a "consumer friendly" bank by waiving a technical defense that would deny a jury the ability to hear and render a verdict in a case of "outrageous" facts of wrongdoing and fraud in one of its loan program. Judge's words:

(Logo: http://photos.prnewswire.com/prnh/20130919/NE82978LOGO )

Conclusion:
And so, Wells Fargo wins on a technicality. The Court never addresses the merits of this case and expresses no opinion thereon. Still, it is appropriate to point out that, were Henning to prove his case on the merits, the conduct of Wells Fargo would be shown to be nothing short of outrageous. On the other hand, perhaps if Wells Fargo addressed the merits, its conduct would be vindicated by fair-minded American jurors. A quick visit to Wells Fargo's website confirms that it vigorously promotes itself as consumer friendly, Loans and Programs, page within Home Lending, wellsfargo.com, https://www.wellsfargo.com/mortgage/loan-programs/ (last visited September 17, 2013); a far cry from the hard-nosed win-at-any cost stance it has adopted here. The technical (and now obsolete) preemption defense upon which Wells Fargo relies is an affirmative defense which can be waived. See, e.g., Tompkins v. United Healthcare of New England, 203 F.3d 90, 97 (1st Cir. 2000). The disconnect between Wells Fargo's publicly advertised face and its actual litigation conduct here could not be more extreme. These facts lead this Court to inquire whether Wells Fargo wishes to address Henning's claims on the merits. After all, it may be that Wells Fargo has done nothing wrong.
ACCORDINGLY, it is ORDERED that Wells Fargo, within 30 days of the date of this order, shall submit a corporate resolution bearing the signature of its president and a majority of its board of directors that it stands behind the conduct of its skilled attorneys and wishes to avail itself of the technical preemption defense to defeat Henning's claim. Should it do so, judgment will enter for Wells Fargo. If no such resolution is filed, the Court will deem the preemption defense waived and both Wells Fargo and Henning will have the opportunity to address the merits (i.e., what really happened) at e trial before an American jury.

Henning v. Wachovia n/k/a Wells Fargo, U.S.D.C. District of Massachusetts #11-11428-WGY

Mr. Henning's counsel is Diviacchi Law Office.

©2012 PR Newswire. All Rights Reserved.

## More From CBS 3 Springfield

- Springfield woman charged in hit & run
- President's plane lands at Westover
- New Halloween tradition announced for Springfield
- Man dies after motorcycle accident with U-haul truck
- 'Large disturbance' closes Elizabeth Ave. in Westfield

## From Around the Web

- Going Barefoot Could Kill You    (uLive)
- Abducted 14-year-old Georgia teen found alive, two suspects in custody (NBC Latino)
- Country Musician Arrested for Disgusting Plans with 2 Young Girls Has Worst Excuse (CafeMom)
- Report: Man leaves 400 lb wife to die (theGrio)
- Daughter's brutally honest obit for her mom goes viral (The Daily Dot)

Recommended by



SEYFARTH SHAW LLP
ATTORNEYS

Seyfarth Shaw LLP

World Trade Center East

Two Seaport Lane

Suite 300

Boston, MA  02210-2028

(617) 946-4800

fax (617) 946-4801

www.seyfarth.com

Writer's direct phone
(617) 946-4874

Writer's e-mail
dbizar@seyfarth.com

September 30, 2013

**BY HAND DELIVERY**

Clerk's Office
United States Court of Appeals First Circuit
John Joseph Moakley U.S. Courthouse
1 Courthouse, Way
Boston, MA 02210

Re:    In Re:  Wells Fargo Bank, N.A.

Dear Sir or Madam:

Enclosed is an original and three copies of the Petition for Writ of Mandamus as well as a check in the amount of $450.00 made payable to Clerk, U.S. Court of Appeals.

Please feel free to contact me should you have any questions.

Very truly yours,

SEYFARTH SHAW LLP

David M. Bizar

Enclosure
cc:    The Honorable William G. Young (w/enclosure)
       Valeriano Diviacchi, Esq (w/enclosure)
       Frank Saia, Esq (w/enclosure)

LONDON  WASHINGTON, D.C.  SAN FRANCISCO  SACRAMENTO  NEW YORK  LOS ANGELES  HOUSTON  CHICAGO  BOSTON  ATLANTA

FILED IN CLERKS OFFICE
US COURT OF APPEALS
FOR THE FIRST CIRCUIT
2013 SEP 30  A 11: 57